[Cite as *Floch v. Davis*, 2013-Ohio-4968.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| CATHERINE L. FLOCH, INDIVIDUALLY AND AS EXECUTRIX AND SOLE HEIR OF THE ESTATE OF CATHERINE W. TUPPER, DECEASED, | : | **O P I N I O N** |
| | : | |
| | : | |
| Plaintiff-Appellee, | : | |
| | : | **CASE NO. 2013-T-0021** |
| - vs - | : | |
| CHARLES E. DAVIS, et al., | : | |
| | : | |
| Defendant-Appellant. | | |

Civil Appeal from the Trumbull County Court of Common Pleas, Case No. 2010 CV 2040.

Judgment: Affirmed.

*Douglas J. Neuman*, Westenfield, Neuman & Parry, 761 North Cedar Street, #1, Niles, OH 44446 (For Plaintiff-Appellee).

*John H. Chaney, III*, Daniel Daniluk, L.L.C., 1129 Niles-Cortland Road, S.E., Warren, OH 44484 (For Defendant-Appellant).

COLLEEN MARY O'TOOLE, J.

{¶1} Charles E. Davis appeals from the judgment entry of the Trumbull County Court of Common Pleas, overruling his objections to, and adopting, the decision of its magistrate in an action for conversion and intentional infliction of emotional distress. We affirm.

{¶2} Mr. Davis and Catherine Tupper, both widowed, entered a close relationship in 1996. While maintaining separate residences, they spent most of their time together. Mr. Davis testified that he kept many tools and other personal effects at Ms. Tupper's house, which he was fixing for her. Eventually, the couple purchased a 1997 Yellowstone Motorhome together, the title being in both their names, with a right of survivorship. The title was in Ms. Tupper's possession.

{¶3} Ms. Tupper passed away in November 2002. Evidently, her closest relatives were Catherine Floch and her husband, who work as long haul truckers. They seem to have been out of state driving at the time of Ms. Tupper's death. It appears that Mr. Davis handled the funeral arrangements in Ohio until their return. He had keys to Ms. Tupper's house, which he gave sometime thereafter to Mrs. Floch. During this period, he never removed his personal items, from Ms. Tupper's house; nor did he take the motorhome, which was parked there.

{¶4} Mrs. Floch was appointed executrix of her mother's estate, and, eventually, took possession of her mother's house. She testified that she was aware that the motorhome passed to Mr. Davis by way of survivorship, and that she delivered the title to the attorney handling the estate for delivery to him. He does not appear to have given it to Mr. Davis.

{¶5} April 2, 2004, Mr. Davis wrote Mrs. Floch a letter, proposing certain terms to settle outstanding financial affairs between himself and Ms. Tupper's estate. The letter reminded her that he needed title to the motorhome. Attached to the letter was a list of personal property he alleged was still at Ms. Tupper's house. Mrs. Floch did not respond.

**{¶6}** Mr. Davis testified that the motorhome remained parked at Ms. Tupper's house for two or two and one-half years after her death, when Mrs. Floch took it to her own house. Mrs. Floch testified she thought she had left it at her mother's house for about five years.

**{¶7}** Mr. Davis retained keys to the motorhome. A year after Ms. Tupper's death, he recovered a television set from it. His keys were stolen in 2005. Sometime thereafter, Mrs. Floch told him that she had lost her mother's keys in the snow, and asked him if he could help. He tried to start the motorhome with keys to a different vehicle, but was unsuccessful.

**{¶8}** Mr. Davis testified that he tried to get a new title for the motorhome, but was refused, since a title already existed. Eventually, he seems to have discovered a copy or carbon of the original title, on the basis of which, the title bureau issued him a new one in his own name.

**{¶9}** In September 2008, Mr. Davis had the motorhome towed from Mrs. Floch's residence. She did not object.

**{¶10}** August 4, 2010, Mrs. Floch filed this action in foreclosure against Mr. Davis. The action was premised on a judgment she had received against Mr. Davis, in the sum of approximately $13,400. The pleadings state that the judgment was in her favor both individually and as her mother's executrix. There are statements in the briefs and various court orders that the judgment was rendered by the Trumbull County Central District Court, and arose from payments Mrs. Floch had made on the note pertaining to the motorhome, but nothing of record indicates the basis for the judgment.

{¶11} October 7, 2010, Mr. Davis answered and counterclaimed in the foreclosure action. The counterclaim included claims for conversion of both the motorhome and Mr. Davis' tools, for damage to his credit, and intentional infliction of emotional distress.

{¶12} Mrs. Floch answered the counterclaim. July 12, 2011, the parties entered an agreed judgment entry, whereby Mr. Davis deposited the amount prayed for in the foreclosure action in an escrow account with Mrs. Floch's attorney. Further proceedings on the foreclosure were stayed pending trial of Mr. Davis' counterclaim.

{¶13} Commencing May 4, 2012, a two-day trial was held before the magistrate. Mr. Davis voluntarily dismissed his claim for damage to his credit. June 26, 2012, the magistrate filed his decision. Mr. Davis had argued that Mrs. Floch was liable for "continuing" conversions regarding the motorhome and his tools. The magistrate rejected this as a matter of law. The magistrate found the conversion claims barred by the statute of limitations. The magistrate further remarked that Mr. Davis could have filed claims with Ms. Tupper's estate, or in the alleged Trumbull County Central District Court action brought by Mrs. Floch, but did not do so, indicating the alleged conversions were not particularly significant to him. The magistrate also found that Mr. Davis failed to state a claim for intentional infliction of emotional distress as a matter of law, and that such claim was also time-barred.

{¶14} July 10, 2012, Mr. Davis filed his objections to the magistrate's report. By a judgment entry filed February 6, 2013, the trial court overruled the objections, and adopted the decision of the magistrate. This appeal timely ensued, Mr. Davis assigning six errors:

4

**{¶15}** "[1.] The trial court erred to the prejudice of appellant by denying his objections to the magistrate's decision, when it was clear that the magistrate incorrectly determined that appellant's assets were estate assets and appellant's claims should have been made in the probate court.

**{¶16}** "[2.] The trial court erred to the prejudice of appellant by denying his objections to the magistrate's decision, when it was clear that the magistrate incorrectly determined that appellant's claims should have been made in a previous, unrelated action in the Trumbull County Central District Court.

**{¶17}** "[3.] The trial court erred to the prejudice of appellant by denying his objections to the magistrate's decision, when it was clear that the magistrate incorrectly determined that the burden was on appellant to commit a criminal act or subject himself to civil liability to retrieve his assets.

**{¶18}** "[4.] The trial court erred to the prejudice of appellant by denying his objections to the magistrate's decision, when it was clear that the magistrate incorrectly determined that appellant's counterclaim for conversion was barred by the statute of limitations.

**{¶19}** "[5.] The trial court erred to the prejudice of appellant by denying his objections to the magistrate's decision, when it was clear that the magistrate incorrectly determined the date of commencement for the statute of limitations.

**{¶20}** "[6.] The trial court erred to the prejudice of appellant by denying his objections to the magistrate's decision, when it was clear that appellant had established a prima facie case of intentional infliction of emotional distress."

{¶21} "Initially, we note that the trial court's decision to adopt, reject, or modify a magistrate's decision is reviewed for abuse of discretion. *In re Gochneaur,* 11th Dist. No. 2007-A-0089, 2008-Ohio-3987, at ¶16. Regarding this standard, we recall the term 'abuse of discretion' is one of art, connoting judgment exercised by a court which neither comports with reason, nor the record. *State v. Ferranto* (1925)*,* 112 Ohio St. 667, 676-678, * * *. An abuse of discretion may be found when the trial court 'applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact.' *Thomas v. Cleveland,* 176 Ohio App.3d 401, 2008-Ohio-1720, at ¶15, * * *." (Parallel citations omitted.) *Cefaratti v. Cefaratti*, 11th Dist. Lake Nos. 2008-L-151 and 2009-L-055, 2010-Ohio-5661, ¶15.

{¶22} We consolidate the first and second assignments of error for review. By the first, Mr. Davis objects that the trial court's magistrate incorrectly found he was required to bring claims regarding the motorhome and his personal effects left at Ms. Tupper's residence against her estate. He notes that the motorhome passed automatically to him on her death; that the tools, etc., were his property in any case; and that the claims were not in the jurisdiction of the probate court. By the second assignment of error, he similarly argues that any claims regarding conversion of the motorhome and tools were not compulsory counterclaims in the action allegedly filed by Mrs. Floch in the Trumbull County Central District Court.

{¶23} We respectfully suggest that Mr. Davis mistakes the import of the magistrate's decision on these issues. At no point in his decision did the magistrate conclude that Mr. Davis was required to file a claim against Ms. Tupper's estate, or to counterclaim in any county court action. The magistrate simply noted that these might

6

have been viable ways to deal with the claims, which existed from the time of Ms. Tupper's death in November 2002, and that Mr. Davis chose to sleep on his rights. These observations by the magistrate did not form the basis of his legal decisions, and, even if erroneous, do not constitute reversible error.

{¶24} The first and second assignments of error lack merit.

{¶25} By his third assignment of error, Mr. Davis contends that the decision of the magistrate illegally exposed him to civil and criminal liability for trespass. In his decision, the magistrate observed that Mr. Davis had access to the motorhome, and Ms. Tupper's house where his tools were allegedly stored, but did not take the items.

{¶26} We respectfully disagree that the magistrate suggested Mr. Davis commit a trespass. His own testimony indicates that he took care of Ms. Tupper's house, and dog, immediately after her death, because Mrs. Floch and her husband were on a trucking trip. At that time, he retained keys to the house. Presumably, he had permission at that time to be there, and to take his personal effects, including the motorhome. Further, he admitted to trespassing about a year after Ms. Tupper's death, in order to recover his television from the motorhome. When he finally recovered the motorhome in September 2008, he called Mrs. Floch, and told her he was sending a towing service to get it – and she did not object. We find, again, that the magistrate's observations on this issue simply illustrate the undeniable fact that Mr. Davis made little effort over a period of years to obtain his possessions.

{¶27} The third assignment of error lacks merit.

7

{¶28} By his fourth assignment of error, Mr. Davis advances a novel concept at Ohio law: the doctrine of a "continuing" conversion. Citing to various federal cases not related to conversion, and Ohio cases dealing with nuisance or trespass, he argues that he suffered new harm each time Mrs. Floch exercised dominion over his property – i.e., by moving the motorhome – thus tolling the statute of limitations, which is four years for conversion. R.C. 2305.09(B).

{¶29} We respectfully disagree. A trespass or nuisance may be continuous because it results in discreet, repeated violations of another's property rights: for instance, by causing periodic flooding of another's property. *See, e.g., Valley Ry. Co. v. Franz*, 43 Ohio St. 623, 626 (1885). However, the elements of conversion are: (1) the plaintiff's ownership and right to possess property at the time of the conversion; (2) defendant's conversion by wrongful act or dispossession; and (3) damages. *Peirce v. Szymanski*, 6th Dist. Lucas No. L-11-1298, 2013-Ohio-205, ¶19. Thus, pursuant to R.C. 2305.09(B), a cause of action for conversion accrues when a party discovers, or with reasonable care should have discovered, the injury. *Koe-Krompecher v. Columbus*, 10th Dist. Franklin No. 05AP-697, 2005-Ohio-6504, ¶14, quoting *Investors REIT One v. Jacobs*, 46 Ohio St.3d 176, 179 (1989). The injury described in conversion commences whenever one person improperly exercises dominion over another's property. Mr. Davis knew that Mrs. Floch was exercising dominion over the motorhome when she did not turn over the title to him. He knew she was exercising dominion over his tools and other personal effects, at latest, when she did not respond to his April 2, 2004 letter listing the items sought.

8

{¶30} Under his fourth assignment of error, Mr. Davis also argues that Mrs. Floch is equitably estopped from relying on the statute of limitations regarding his conversion claims.

{¶31} "To invoke the doctrine of equitable estoppel, a party must demonstrate the four essential elements: '1) there must be a representation by words, acts, or silence; 2) the representation must communicate some fact or state of affairs in a misleading way; 3) the representation must induce actual reliance by the other party, and such reliance must be reasonable and in good faith; and 4) the other party would suffer prejudice if the representing party were not estopped or precluded from contradicting the earlier representation.' *Grange Mut. Cas. Co. v. Smock,* 11th Dist. No. 2000-G-2293, * * *, 2001 Ohio App. LEXIS 4127 at *9." (Parallel citation omitted.) *Sloan v. Shafer Commercial and Indus. Services, Inc.*, 11th Dist. Trumbull No. 2008-T-0013, 2008-Ohio-4765, ¶20.

{¶32} Mr. Davis argues that the record reveals numerous communications between himself and Mrs. Floch regarding the motorhome and his tools and personal effects over the years; that she assured him they would be turned over; and, that he relied in good faith on these representations, to his detriment.

{¶33} We respectfully disagree that equitable estoppel applies in this case. As the magistrate repeatedly noted in his decision, the record is remarkable for the infrequency of contact between the parties regarding the motorhome and Mr. Davis' other effects, as well as his evident disinterest in recovering these items for many years. Mrs. Floch testified she gave the title to the motorhome to the attorney handling her mother's estate, and that she expected Mr. Davis to receive it at a meeting he had with

9

that attorney. Nothing indicates Mr. Davis followed up on this. Mrs. Floch admittedly did not respond to Mr. Davis' April 2, 2004 letter requesting title to the motorhome and listing the personal items he believed remained in Ms. Tupper's house – but nothing indicates that Mr. Davis made further inquiry. There is no evidence of a misrepresentation by Mrs. Floch, or any reliance by Mr. Davis.

{¶34} Mr. Davis also directs our attention to R.C. 2305.15, which provides, in pertinent part:

{¶35} "(A) When a cause of action accrues against a person, if the person is out of the state, has absconded, or conceals self, the period of limitation for the commencement of the action * * * does not begin to run until the person comes into the state or while the person is so absconded or concealed. After the cause of action accrues if the person departs from the state, absconds, or conceals self, the time of the person's absence or concealment shall not be computed as any part of a period within which the action must be brought.

{¶36} At trial, Mrs. Floch testified that, from the time of her mother's death, until 2008, when her husband underwent a series of operations, the two of them spent more than one-half of their time out of state, trucking. She testified that after 2008, they recommended further long haul trucking, but at a reduced schedule. On this basis, Mr. Davis asserts that his conversion claims were tolled while the Flochs were on the road.

{¶37} We respectfully disagree. First, the party opposing a statute of limitations defense on the basis of R.C. 2305.15 bears the burden of proving that the opposing party was absent from the state in a manner sufficient to invoke the statute. *Stafford v. Columbus Bonding Ctr.*, 177 Ohio App.3d 799, 2008-Ohio-3948, ¶11 (10th Dist. 2008).

10

Ms. Tupper died in November 2002; Mr. Davis did not bring his conversion claims until October 2010. The limitations period for conversion is four years. Mrs. Floch's testimony is simply insufficient to establish that she was out-of-state a full four years in this period.

**{¶38}** Second, R.C. 2305.15 cannot be applied in a fashion which impedes people from searching for, or pursuing, out-of-state employment, as that constitutes an impermissible burden on interstate commerce in violation of the Commerce Clause, U.S. Constitution, Article I, Section 8, para. 3. *Tesar v. Hallas*, 738 F.Supp. 240, 241-243, citing *Bendix Autolite Corp. v. Midwesco Enterprises,* 486 U.S. 888 (1988). Clearly, as an interstate trucker, Mrs. Floch's employment directly involved interstate commerce.

**{¶39}** Finally, under his fourth assignment of error, Mr. Davis asserts that the common law doctrine of recoupment allows him to maintain his conversion claims as a defense to the foreclosure action, even if those claims are barred by the statute of limitations. Common law recoupment was first recognized by the Supreme Court of Ohio in *Riley v. Montgomery*, 11 Ohio St.3d 75 (1984), at paragraph one of the syllabus, which states:

**{¶40}** "A claim of a defendant which would be barred by the statute of limitations if brought in an action for affirmative relief is available as a defense or under the common-law theory of recoupment, when the claim arises out of the same transaction as the plaintiff's claim for relief, and when it is offered only to reduce the plaintiff's right to relief."

11

{¶41} In the trial court, Mr. Davis argued vehemently in his trial brief, proposed findings of fact and conclusions of law, and objections to the magistrate's decision, that his conversion claims retained vitality as a defense under the theory of recoupment, even if they were otherwise time-barred. On appeal, he notes that neither the magistrate, nor the trial court dealt with this issue.

{¶42} We respectfully disagree that the doctrine applies in this case. A time-barred claim is only available as a defense under recoupment if it arises from the same transaction as the plaintiff's claim for relief. In this case, Mrs. Floch's claim is in foreclosure. Following the filing of Mr. Davis' counterclaim, Mrs. Floch moved the trial court to bifurcate, on the basis that her claim and the counterclaim did not arise from the same transaction. In opposing the motion to bifurcate on the basis of judicial economy, Mr. Davis stated: "Admittedly, the Counterclaim *does not arise out of the same transaction or occurrence, and does not involve the same operative facts*, as the [claim]." (Emphasis added.) We believe the trial court was entitled to rely on this admission by Mr. Davis in rendering judgment.

{¶43} Further, we reiterate that nothing in the record before this court indicates the basis for the judgment lien underlying Mrs. Floch's foreclosure action. While the parties and the trial court indicate at various junctures that the judgment lien is premised on a county court action, and arose from Mrs. Floch making payments on the motorhome's note, nothing of evidentiary value before us shows this. Thus, we cannot say that the claim for foreclosure and counterclaims for conversion arise from the same transaction.

{¶44} The fourth assignment of error lacks merit.

**{¶45}** By his fifth assignment of error, Mr. Davis asserts the trial court miscalculated the dates on which the statute of limitations for his conversion claims began running. The magistrate concluded that the claims began running on Ms. Tupper's death in November 2002. Mr. Davis cites to case law holding that a claim for conversion does not accrue until the plaintiff makes a demand for return of his or her property, and the alleged tortfeasor refuses. Mr. Davis argues that this did not occur until he sent his letter of April 2, 2004 to Mrs. Floch, requesting title to the motorhome and listing the personal items he believed were at the Tupper house.

**{¶46}** Demand and refusal are only necessary to sustain a cause of action for conversion when the alleged tortfeasor obtains possession of the property lawfully. *Peirce*, 2013-Ohio-205, at ¶19. Assuming, arguendo, that the trial court erred in determining that the alleged conversions commenced in November 2002, rather than April 2004, we fail to see how this helps Mr. Davis avoid the bar of limitations, since he did not bring his counterclaims for conversion until October 2010. This is still more than two years beyond the applicable four year statute of limitations set forth at R.C. 2305.09(B).

**{¶47}** The fifth assignment of error lacks merit.

**{¶48}** By his sixth assignment of error, Mr. Davis contends the trial court erred in concluding that he failed to state a claim for intentional infliction of emotional distress. There was testimony at trial that Mr. Davis has required additional time with his psychologist due to his failure to obtain the motorhome earlier, or to get his other personal effects back.

13

{¶49} As this court held in *Weir v. Krystie's Dance Academy*, 11th Dist. Trumbull No. 2007-T-0050, 2007-Ohio-5910, ¶26:

{¶50} "A claim for intentional infliction of emotional distress lies where '(o)ne who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another.' *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, * * *, at syllabus. 'In a case for intentional infliction of emotional distress, a plaintiff must prove (1) that the defendant intended to cause the plaintiff serious emotional distress, (2) that the defendant's conduct was extreme and outrageous, and (3) that the defendant's conduct was the proximate cause of plaintiff's serious emotional distress.' *Phung v. Waste Mgt., Inc.,* 71 Ohio St.3d 408, 410, * * * (citation omitted). Additionally, the mental anguish suffered by the plaintiff must be so severe and debilitating that 'a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case.' *Paugh v. Hanks* (1983), 6 Ohio St.3d 72, 78, * * *. 'A non-exhaustive litany of some examples of serious emotional distress should include traumatically induced neurosis, psychosis, chronic depression, or phobia.' Id. (citation omitted); *Kovacic v. Eastlake,* 11th Dist. No. 2005-L-215, 2006-Ohio-7016, at ¶94 (citations omitted)." (Parallel citations omitted.)

{¶51} In this case, there is no evidence that Mrs. Floch intended to cause Mr. Davis serious emotional distress. There is no evidence that her actions were extreme and outrageous. The facts do not state a claim for intentional infliction of emotional distress.

{¶52} We further note that the magistrate held, alternatively, that any claim for intentional infliction of emotional distress was barred by the applicable statute of

14

limitations, which is four years pursuant to R.C. 2305.09(D). *Karlen v. Carfangia*, 11th Dist. Trumbull No. 2000-T-0081, 2001 Ohio App. LEXIS 2481, *24 (June 1, 2001). On appeal, Mr. Davis does not challenge this decision.

{¶53} The sixth assignment of error lacks merit.

{¶54} The judgment of the Trumbull County Court of Common Pleas is affirmed. It is the further order of this court that appellant is assessed costs herein taxed. The court finds there were reasonable grounds for this appeal.


CYNTHIA WESTCOTT RICE, J., concurs,

DIANE V. GRENDELL, J., concurs in judgment only.