[Cite as *Martin v. Mahr Machine Rebuilding*, 2017-Ohio-1101.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| WILLIAM F. MARTIN, dba, D&M TRUCKING, | : | **O P I N I O N** |
| | : | |
| Plaintiff-Appellant, | : | **CASE NO. 2015-L-101** |
| | : | |
| - vs - | : | |
| | : | |
| MAHR MACHINE REBUILDING, INC., et al., | : | |
| | : | |
| Defendants-Appellees. | : | |

Civil Appeal from the Lake County Court of Common Pleas, Case No. 13 CV 002488.

Judgment: Affirmed.

*Jay F. Crook,* Shryock, Crook & Associates, LLP, 30601 Euclid Avenue, Wickliffe, OH 44092 (For Plaintiff-Appellant).

*Nicholas D. Laudato,* 37265 Euclid Avenue, Willoughby, OH 44094 (For Defendants-Appellees).

CYNTHIA WESTCOTT RICE, P.J.

{¶1}   Appellant, William F. Martin, dba D&M Trucking, appeals the judgment of the Lake County Court of Common Pleas, following a bench trial, in favor of appellees, Mahr Machine Rebuilding, Inc., Fred Mahr, and Execumahr LLC, on appellant's claim for conversion. The principal issue is whether the trial court applied the correct legal standard for an action in conversion. For the reasons that follow, we affirm.

{¶2} On November 19, 2013, appellant filed a complaint against appellees asserting claims for conversion and tortious interference with contract. Appellees filed an answer denying the material allegations of the complaint.

{¶3} The matter proceeded to bench trial. Appellant, William Martin, testified he is the sole proprietor of D&M Trucking, a trucking business. Mr. Martin said he owns several trucks used in the business, which he stores on a parcel of land in Wickliffe, Ohio, which he leases from First Energy ("CEI").

{¶4} Mr. Martin said that his lease with CEI did not give him a right to access CEI's property so he was required to obtain his own right of access from a third party. Consequently, in 2003, Mr. Martin obtained permission from NPK Manufacturing, which is not a party to this action, to use its property to gain access to CEI's parcel. NPK gave Mr. Martin a license to use its driveway to access the CEI property via a letter, dated April 11, 2003, which provided: "This is a letter of authorization to [William] Martin of D&M Trucking allowing *temporary* access to the CEI property located at the south end of NPK Manufacturing['s] property. * * * NPK Manufacturing *reserves the right to revoke this authorization at any time.*" (Emphasis added.)

{¶5} Timothy Bowen, a member of NPK's management, testified that Mr. Martin never entered a contract with NPK for the use of its driveway and never gave NPK any consideration in exchange for its use.

{¶6} Mr. Martin said that in December 2008, he became involved in an unrelated dispute regarding rent he allegedly owed to appellees, who own a parcel of land adjacent to NPK's property. Mr. Martin had rented a building from appellees on their property, and appellees claimed Mr. Martin owed them $6,000 in unpaid rent. Mr.

2

Bowen said that appellee, Fred Mahr, told him that Mr. Martin owed him past due rent and that he, Mr. Mahr, was trying to encourage Mr. Martin to contact him about settling his debt. As a result, Mr. Bowen said that in the fall of 2009, Mr. Mahr put a lock on NPK's gate leading to the CEI property and placed a sign on the gate that said: "For access contact Mahr Machine." Mr. Bowen said that Mr. Mahr also parked a car on NPK's property in front of the gate. The trial court found that NPK gave permission to Mr. Mahr to take these actions.

{¶7} Mr. Bowen said that in November 2009, he sent a letter on behalf of NPK to Mr. Martin, which stated: "This letter is to officially notify you that NPK Manufacturing is hereby exercising our right to rescind the Letter of Authorization, dated April 11, 2003, that allowed you temporary access to the CEI property located at the south end of the NPK Manufacturing property. * * * Please refrain from using the NPK property from this point forward."

{¶8} Mr. Martin concedes he received alternate access to the CEI property from another landowner a few months later in early 2010.

{¶9} After the presentation of evidence, the trial court found in favor of appellees on Mr. Martin's claims for conversion and tortious interference with contract. Mr. Martin appeals and asserts two assignments of error. Because they are related, they are considered together. They allege:

{¶10} "[1.] The trial court erred in adding new requirements to the law governing the tort of conversion.

{¶11} "[2.] The trial court erred in crea[t]ing a new affirmative defense to the tort of conversion, third party permission."

3

{¶12} As a preliminary matter, we note that appellant does not appeal the trial court's finding against him on his claim for tortious interference with contract. Thus, the court's denial of that claim stands and appellant's appeal is limited to the court's finding against him on his conversion claim.

{¶13} "A claimant attempting to establish the tort of conversion must demonstrate the defendant wrongfully exerted control over the claimant's personal property inconsistent with or in denial of his or her rights." *Smith v. Bridal*, 11th Dist. Trumbull No. 2009-T-0014, 2009-Ohio-6520, ¶17. The elements of conversion are: (1) the plaintiff's ownership and right to possess the property at the time of the conversion; (2) the defendant's conversion by wrongful act of plaintiff's property rights; and (3) damages. *Floch v. Davis*, 11th Dist. Trumbull No. 2013-T-0021, 2013-Ohio-4968, ¶29.

{¶14} Under appellant's first assigned error, he argues the trial court erred in not applying the correct legal standard of conversion. Whether the trial court applied the correct legal standard is a legal issue that we review de novo. *Green Vision Materials, Inc. v. Newbury Twp. Bd. Of Zoning Appeals*, 11th Dist. Geauga No. 2013-G-3136, 2014-Ohio-4290, ¶46-47

{¶15} Appellant argues the trial court erred in requiring him to prove an additional element of conversion, i.e., that appellees' actions were unlawful. As a result, he takes issue with the following finding of the trial court:

> {¶16} [Appellant] did not establish that [appellees] converted, by an *unlawful* act, any of [appellant's] right to the [CEI] property even though there is evidence indicating that [appellees] caused a car to be parked in front of the fence leading to the [CEI] property. Conversion can only occur if there is a wrongful or *unlawful* act. In this case, the evidence is uncontroverted that the car and sign were placed on NPK property with NPK's permission, and thus,

4

[appellees] did not engage in a wrongful or *unlawful* act. (Emphasis added.)

{¶17} While appellant concedes conversion requires proof that the defendant acted wrongfully, appellant argues that because the trial court found appellees' conduct was not wrongful or unlawful, this means the court imposed an additional requirement on him that he prove appellees' conduct was unlawful. However, the court did not require appellant to prove an additional element. Rather, the court simply found appellees' conduct was not wrongful or unlawful. The terms "wrongful" (which is a recognized element of conversion) and "unlawful" are synonymous. "Wrongful" is defined as "having no legal sanction: unlawful." Webster's Third New International Dictionary (1986) 2642. Thus, the court used both terms to say the same thing, namely, that appellees' conduct was not wrongful. It is worth noting that in appellant's complaint, in support of his conversion claim, he alleged that appellees "*unlawfully* exerted dominion and control over Plaintiff's property." (Emphasis added.) Thus, appellant tacitly conceded that the terms "wrongful" and "unlawful" are synonymous.

{¶18} Under appellant's second assigned error, he argues the trial court erred in creating a new affirmative defense to the tort of conversion where a third party grants permission to the defendant to commit the tort. However, to the contrary, the trial court simply found that, because appellees' actions were taken on NPK's property *with its permission*, appellees did not engage in a wrongful or unlawful act and, thus, were not liable in conversion. An act is not wrongful if "it is done in the exercise of an equal or superior right." Black's Law Dictionary (Rev.4th Ed.1968) 1788. Since NPK gave appellees permission to take the actions they did, appellees had authority equal or

5

superior to that of appellant in the driveway. Thus, appellees' actions were not wrongful and they were not liable in conversion.

{¶19} Appellant argues that he had a "legal right" to use NPK's driveway by virtue of its license and that NPK could not revoke it or give permission to appellees to interfere with it. However, as the trial court found, appellant and NPK never entered a contract supported by consideration for appellant to use the driveway. Thus, appellant did not have a legally enforceable right to use it. As a result, appellant's authority to use NPK's driveway was permissive, temporary and revocable by NPK for any or no reason. As the trial court also found, NPK simply gave appellant a license to use its driveway.

{¶20} "A license is a *privilege* given to an individual to do an act upon the land of another *without possessing any interest therein* and is usually *terminable* at the will of the licensor." (Emphasis added.) *Cambridge Village Condominium Assn. v. Cambridge Condominium Assn.*, 139 Ohio App.3d 328, 333 (11th Dist.2000). Thus, NPK's license did not give appellant a legally enforceable interest in the driveway. Appellant fails to cite any case law holding that the holder of a mere license owns a property right that can be the subject of a conversion action. We agree with the trial court's finding that because there was no contract between NPK and appellant, NPK was not required to allow appellant to use the property and gate indefinitely and had a right to revoke the license.

{¶21} In any event, appellant could have easily avoided the problem in which he found himself by negotiating a contract with NPK and paying for the right to use the driveway. If he had done so, he would have had a legally enforceable right to use the driveway that could not be unilaterally revoked.

6

**{¶22}** We therefore hold the trial court did not err because it did not require appellant to prove a new element of conversion and it did not create a new affirmative defense to this tort.

**{¶23}** For the reasons stated in the Opinion, the assignments of error are overruled. It is the order and judgment of this court that that the judgment of the Lake County Court of Common Pleas is affirmed.

THOMAS R. WRIGHT, J., concurs,

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

_____

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

**{¶24}** I respectfully dissent.

**{¶25}** This case involves claims for conversion and tortious interference with contract.

**{¶26}** An appellate court will reverse a judgment of the trial court if it is not supported by some competent, credible evidence going to all the essential elements of the case or defense. *Patterson v. Godale*, 11th Dist. Lake Nos. 2014-L-034 and 2014-L-042, 2014-Ohio-5615, ¶12, citing *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279.

**{¶27}** Conversion involves the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or the withholding of property from the owner's possession under a claim inconsistent with his rights. *R&S Distrib. v. Hartge Smith Nonwovens, LLC,* 1st Dist. Hamilton No. C-090100, 2010-Ohio-3992, ¶23. "[T]he

7

elements of conversion are: (1) the plaintiff's ownership and right to possess property at the time of the conversion; (2) defendant's conversion by wrongful act or dispossession; and (3) damages." *Floch v. Davis*, 11th Dist. Trumbull No. 2013-T-0021, 2013-Ohio-4968, ¶29. "Conversion is present with even a temporary denial of possession." *Dalicandro v. Morrison Rd. Dev. Co.,* 10th Dist. Franklin Nos. 00AP-619 and 00AP-656, 2001 WL 379893, *6 (Apr. 17, 2001).

**{¶28}** Regarding tortious interference with contract, an appellant is required to establish the following elements: "(1) the existence of a contract; (2) the wrongdoer's knowledge of the contract; (3) the wrongdoer's intentional procurement of the contract's breach; (4) the lack of justification; and (5) resulting damage. *Bell v. Horton* (1996), 113 Ohio App.3d 363, 365 * * *." (Parallel citation omitted.) *Arrich v. Moody*, 11th Dist. Trumbull No. 2004-T-0100, 2005-Ohio-6152, ¶19.

**{¶29}** Appellees and NPK were owners of adjacent parcels of land bounded by Lakeshore Boulevard on one end and the CEI property on the other end. Appellant, the sole proprietor of D&M Trucking, stored his heavy machinery/vehicles on the CEI leased property which is located behind the NPK property. The machinery/vehicles are the foundation of appellant's business. The only access to the CEI property is via a shared drive through appellees' and NPK's properties.

**{¶30}** NPK granted and negotiated with appellee Fred Mahr to provide appellant a temporary right of access in essence a tenancy at will subject to reasonable notice to the CEI leased property. Thereafter, appellant orally leased a rear out building from appellees. Appellees orally agreed to allow appellant to utilize the shared drive to access the property. Thus, appellant had a right of ingress and egress. A dispute later

8

arose over the nature of the rental and payment between appellant and Mr. Mahr. Without providing any notice to appellant, Mr. Mahr installed a lock on the access gate and placed a car in front of the gate, thereby depriving appellant of his rights and access to his property. NPK granted verbal permission to appellees to block appellant's access but did not inform appellant or give him reasonable notice to remove his machinery/vehicles. A few months later, NPK sent appellant a letter indicating it was rescinding its previous right of access. Mr. Mahr stands in the shoes of NPK.

{¶31} A tenancy at will is defined as: "[a] tenancy in which the tenant holds possession with the landlord's consent but without fixed terms (as for duration or rent). Such a tenancy may be terminated by either party upon fair notice." Black's Law Dictionary 1191 (7th Ed.2000).

{¶32} A tenancy at will is created where no valid written lease agreement exists between the parties. *Craft v. Edwards*, 11th Dist. Ashtabula No. 2007-A-0095, 2008-Ohio-4971, ¶35. A tenancy at will may be created by express agreement or it may be implied. *Say v. Stoddard*, 27 Ohio St. 478 (1875). Reasonable notice to terminate is presumed. *See id.* "'Upon payment and acceptance of [monies], (the) tenancy at will then converts to a periodic tenancy,'" i.e., year-to-year, month-to-month. *Craft, supra,* at ¶35, quoting *Manifold v. Schuster*, 67 Ohio App.3d 251, 255 (1990).

{¶33} Based on the facts presented, this writer finds there is some competent, credible evidence in the record to support appellant's claims for conversion and tortious interference with contract as the failure by NPK to notify appellant did not come until months after Mr. Mahr had installed a lock on the gate and placed a car in front of the access gate.

9

**{¶34}** Regarding conversion, appellees and NPK improperly denied appellant the right to use his property by withholding it. *See R&S, supra.* The rights and obligations of tenancy and the rights and obligations of landlords are well established in statute and common law. In effect, there is a contract for the use and enjoyment of property. The requirement of reasonable notice is also well established in regard to one's property rights in a tenancy. Appellees, although a third party, acted with the apparent authority of the landlord and padlocked the entrance to the parking lot of which he had a tenancy at will relationship with NPK and disregarded the reasonable notice requirement of the tenancy, thus, establishing evidence of both claims of tortious interference and conversion. The evidence reveals appellant owned the heavy machinery/vehicles at issue and stored them on the CEI leased property; appellees committed a wrongful act by changing the locks on the access gate and placing a car in front of the gate, i.e., a physical barrier/obstacle, without providing notice to appellant; and appellant suffered damages because he was denied access to his property as the equipment necessary for his business was "held hostage" for several months. *Floch, supra,* at ¶29; *Dalicandro, supra,* at *6-7 (a party commits conversion by placing obstacles in the path leading to and from another's property and exerts wrongful dominion and control over another's equipment by prohibiting access.)

**{¶35}** Regarding tortious interference with contract, the evidence reveals a license between appellant and NPK as well as a lease between appellant and CEI. The trial court found there was no contract between appellant and NPK. The court stated NPK committed no breach because it was not required to permit appellant to use the

10

property indefinitely and it properly rescinded the license. Also, the trial court found the lease between appellant and CEI was not interfered with in any way.

**{¶36}** This writer finds that this matter is analogous to a contract situation. Accordingly, I note there is an implied duty of good faith in most every contract under Ohio law. *Littlejohn v. Parrish*, 163 Ohio App.3d 456, 2005-Ohio-4850, ¶21 (1st Dist.2005). "[P]ublic policy dictates that every contract contains an implied duty for the parties to act in good faith and to deal fairly with each other. Any agreement--whether a lease, a secured loan, or something else--has an implied covenant of good faith and fair dealing that requires not only honesty but also reasonableness in the enforcement of the contract." *Id.* at ¶27.

**{¶37}** This writer further finds that honesty and reasonableness are lacking in this case. Appellees and NPK gave appellant authorization to utilize the shared drive in order to get to his property which was effectively landlocked. As such, appellant had an implied easement of necessity. *See Sivazlian v. Lanese,* 11th Dist. Lake No. 99-L-171, 2000 Ohio App. LEXIS 5916, *8-9 (Dec. 15, 2000); *Hoyt v. Ferl*, 11th Dist. Ashtabula No. 1160, 1984 Ohio App. LEXIS 10184, *6-7 (June 29, 1984).

**{¶38}** Appellees had a duty of good faith and fair dealing to uphold the authorization, even if they would have allowed appellant "one last time" to utilize the drive and remove his property. However, they did not. Rather, appellees interfered with a contractual relationship by placing a lock on the gate and a car blocking all access. Again, the gate was on CEI property and a lease existed between appellant and CEI. I find there was no justification for appellees' conduct.

11

**{¶39}** Because this writer finds merit in appellant's first and second assignments of error, I would reverse the judgment of the trial court and remand the matter for further proceedings.

**{¶40}** I respectfully dissent.