[Cite as *Whiting v. PetSmart, L.L.C.*, 2026-Ohio-1915.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| CHRISTOPHER WHITING, et al. | CASE NO. 2025-L-128 |
| Plaintiffs-Appellants, | |
| - vs - | Civil Appeal from the Court of Common Pleas |
| PETSMART, L.L.C., | |
| Defendant-Appellee. | Trial Court No. 2024 CV 001580 |

## OPINION AND JUDGMENT ENTRY

Decided: May 26, 2026
Judgment:  Affirmed

*Dennis R. Fogarty*, Davis & Young, L.P.A., 29010 Chardon Road, Willoughby Hills, OH 44092 (For Plaintiffs-Appellants).

*Julie Grace Vanvliet*, and *Holly Marie Wilson*, Reminger Co., L.P.A., 200 Public Square, Suite 1200, Cleveland, OH 44114 (For Defendant-Appellee).

SCOTT LYNCH, J.

{¶1}   Plaintiffs-appellants, Christopher and Rachael Whiting, appeal from the judgment of the Lake County Court of Common Pleas, granting summary judgment in favor of defendant-appellee, PetSmart, L.L.C.  For the following reasons, we affirm the judgment of the lower court.

{¶2}   On October 15, 2024, the Whitings filed a complaint against PetSmart.  The Complaint alleged that they took their four-year-old domestic shorthair cat, Strudel, to PetSmart for routine grooming services in October 2023 and she died during these services.  The Complaint alleged that the groomers acted with gross negligence and

willfully harmed Strudel. Count Two raised a claim for Willful Damage of Property pursuant to R.C. 2307.61. Count Three raised claims for Negligent and Intentional Infliction of Emotional Distress. PetSmart filed an Answer to the Complaint.

{¶3} PetSmart filed a November 12, 2024 motion for judgment on the pleadings. The court granted the motion as to Count Three only, finding there can be no serious emotional distress for the loss of property.

{¶4} On August 21, 2025, PetSmart filed a motion for summary judgment. It argued, inter alia, that there was no evidence that PetSmart committed a wrongful act that resulted in Strudel's death which precluded recovery on a conversion claim. The Whitings opposed summary judgment, arguing that there were multiple genuine issues of material fact, including factual inconsistencies and evidence of a wrongful act including: the use of only one groomer during parts of the trimming, which differed from past appointments; the use of a "slip lead" harness in this appointment and not in previous ones; and questions about the groomers' qualifications.

{¶5} The following evidence was presented through the summary judgment motions and attached exhibits, deposition transcripts, and affidavits:

{¶6} Christopher Whiting took his cat, Strudel, to PetSmart in Willoughby for nail trimming on October 6, 2023. He had taken Strudel to PetSmart for this service approximately 12 times. At a typical appointment, he would bring Strudel in around 8:30 a.m. on the recommendation of groomers since it was less busy and would avoid interactions with dogs. The trimming typically took "about 30 seconds." On October 6, Whiting signed a document which stated: "CATS ARE MORE LIKELY TO HAVE COMPLICATIONS FROM THE STRESS OF THE GROOMING EXPERIENCE THAN

Case No. 2025-L-128

ARE DOGS. WHILE WE TAKE PRECAUTIONS TO DECREASE YOUR CAT'S STRESS AS MUCH AS POSSIBLE, ADVERSE CONDITIONS OR EVENTS MAY OCCUR DUE TO A CAT'S REACTION TO THE STRESS OF THE GROOMING EXPERIENCE. PETSMART REQUIRES THAT YOUR CAT RECEIVE AN EXPRESS GROOM AND BE PICKED UP IMMEDIATELY UPON COMPLETION OF THE GROOMING SERVICE." He then left Strudel with the groomers, went to pay, and saw the groomer run out of the salon toward the Banfield Pet Hospital, also located in the PetSmart. He witnessed Banfield employees performing measures to revive Strudel and was told she had stopped breathing. Rescue attempts were unsuccessful.

{¶7} Whiting subsequently returned to PetSmart to review videos from the appointment. He noted that in the videos, he "saw a different process than [he] had seen before in how they handled Strudel." On the one or two prior occasions he had watched the trimming, one groomer held Strudel while the other trimmed her nails. He noticed on October 6, one groomer used a "wire contraption" to remove her from the carrier, "then attempted to perform the nail trim and looked unsuccessful, which required another groomer to help her."

{¶8} Sarah Heyduk, a professional pet stylist who has worked at PetSmart for seven years, trimmed Strudel's claws on October 6. She performed the service on the front claws on her own because she did not have anyone to help at that time. She used a "slip lead" harness to keep Strudel attached to her so she could not run around the salon. She then requested that another employee, Julie Heindell, assist with the back claws because Strudel was "moving too much" and she thought it would be more comfortable. While trimming her back claws, Strudel "started making the 'I don't like this

Case No. 2025-L-128

noise' but it wasn't anything to raise alarm" and sounded normal. Heyduk's affidavit indicated that Strudel "did not appear to be in any apparent distress." Heyduk testified that she only realized something was wrong at the end of the service when she was preparing to return Strudel to the carrier and she went limp. Heyduk did not know how Strudel died and, following a PetSmart investigation, she was found to have followed its policies. She reviewed the video of the trimming and did not observe anything unusual.

{¶9} Heyduk testified that, in order to trim cat claws at PetSmart, one must first complete dog groomer training, have no incidents for six months, and then complete cat groomer training. She became a certified dog groomer in 2020 and a cat groomer in March 2023. Although she identified from pictures of several previous grooming sessions with Strudel that two individuals were involved, she indicated that PetSmart does not require two groomers to trim nails and one groomer can safely perform that service.

{¶10} Heindell assisted Heyduk on October 6. Heyduk instructed her how to hold Strudel and made sure she was doing so correctly. Heindell held Strudel like a newborn, with support on her bottom, which she conceded was different than a groomer pictured in a video from another trimming appointment. Heindell indicated Strudel was generally quiet but alert and did not show signs of disliking being held. Heindell testified: "As Sarah was finishing the last foot, Strudel made a single meow/groan noise and moved slightly in my arms. She was not fighting or growling, I did not even have to adjust my hold." At that time, Heyduk stopped trimming and reassured Strudel. It seemed that Strudel calmed down and Heyduk finished the last two claws. Heindell did not notice Strudel lose consciousness while she was holding her. She placed Strudel on the table when the trimming was finished and she collapsed immediately after she was put on the table,

Case No. 2025-L-128

unresponsive. Heindell indicated that at no time did she have her hand or arm around Strudel's neck nor was the lead around her neck, she followed PetSmart policies in assisting, and she did not believe she did anything wrong in handling Strudel.

{¶11} Heindell testified that she went through PetSmart's dog grooming academy in August 2023 and the cat academy in 2024 or 2025. She testified that PetSmart's process for trimming the cat's nails includes putting a slip lead on them, which is a figure-eight shape that goes across the cat's arms and shoulders and is held by the groomer, and can tighten around the cat's body if pulled. She testified that it is "okay" to have only one groomer perform the nail trimming and a non-groomer can assist by holding the cat.

{¶12} The trial court issued a judgment entry on September 22, 2025, granting PetSmart's motion for summary judgment. The court found there was no genuine issue of material fact as to the conversion claim because there was nothing to demonstrate that PetSmart committed a wrongful act which resulted in the conversion. It determined that the allegation that the employees acted wrongfully because they handled Strudel differently than in past appointments was not supported by evidence that this was against policy or resulted in Strudel's death. The court rejected the Whitings' argument that *res ipsa loquitur* applied since it relates to negligence. It found no willful act to cause harm for the purposes of the R.C. 2307.61 claim.

{¶13} The Whitings timely appeal and raise the following assignments of error:

{¶14} "[1.] The trial court erred in granting summary judgment by weighing evidence resolving competing factual inferences in Appellee's favor, contrary to Civ.R. 56."

{¶15} "[2.] The trial court erred in granting summary judgment on the conversion

Case No. 2025-L-128

claim by applying the incorrect legal standard requiring proof of specific wrongful act or medical causation rather than determining whether Appellee wrongfully exercised dominion or control over Appellant's property."

{¶16} "[3.] The trial court erred in granting summary judgment where genuine issue of material fact exists as to whether Appellee's handling of Appellant's property constituted a wrongful exercise of dominion."

{¶17} Pursuant to Civil Rule 56(C), summary judgment is proper when (1) the evidence shows "that there is no genuine issue as to any material fact" to be litigated, (2) "the moving party is entitled to judgment as a matter of law," and (3) "it appears from the evidence . . . that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence . . . construed most strongly in the party's favor." "A trial court's decision to grant summary judgment is reviewed by an appellate court under a de novo standard of review." *Peer v. Sayers*, 2011-Ohio-5439, ¶ 27 (11th Dist.); *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). "A de novo review requires the appellate court to conduct an independent review of the evidence before the trial court without deference to the trial court's decision." *Id.*

{¶18} "[C]onversion is the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights." *Joyce v. Gen. Motors Corp.*, 49 Ohio St.3d 93, 96 (1990). "The elements of conversion are: (1) the plaintiff's ownership and right to possess the property at the time of the conversion; (2) the defendant's conversion by wrongful act of plaintiff's property rights; and (3) damages." *Martin v. MAHR Machine Rebuilding, Inc.*,

2017-Ohio-1101, ¶ 13 (11th Dist.).

**Credibility and Conflicting Evidence at Summary Judgment Stage**

{¶19} In their first assignment of error, the Whitings argue that there was a factual issue that should have gone to the jury regarding the conversion claim, citing issues of credibility in witness testimony and conflicting evidence.

{¶20} "In summary judgment proceedings, a court may not weigh the evidence or judge the credibility of sworn statements, properly filed in support of or in opposition to a summary judgment motion, and must construe the evidence in favor of the nonmoving party." (Citations omitted.) *Beder v. Cerha Kitchen and Bath Design Studio, LLC*, 2022-Ohio-4463, ¶ 27 (11th Dist.). "When trial courts choose between competing affidavits and testimony, they improperly determine credibility and weigh evidence contrary to summary judgment standards." (Citations omitted.) *Id.* Where there are conflicts in witness testimony or statements that call into question the accuracy or truth of a witness' answers that raise material issues of fact, denial of summary judgment is proper. *Hahn v. Farmakis-King*, 2024-Ohio-786, ¶ 52-53 (11th Dist.).

{¶21} Initially, as to the contention that the affidavits contradicted the depositions and were self-serving, PetSmart contends that arguments relating to validity of the affidavits are new arguments that cannot be presented on appeal. The Whitings argue in rebuttal that they are permitted to address whether the court improperly credited the witness' testimony since it was contradicted by the affidavits and they are not challenging the validity of the affidavits themselves. To the extent that the assignment of error relates to whether the evidence before the court created an issue of material fact when interpreted in a light most favorable to the Whitings, we find it appropriate to consider their

arguments.

{¶22}   The Whitings emphasize that Heindell's and Heyduk's deposition testimony was contradicted by their affidavits, thereby making it error for the court to credit and rely on their testimony in granting summary judgment on the conversion claim.   "When a litigant's affidavit in support of his or her motion for summary judgment is inconsistent with his or her earlier deposition testimony, summary judgment in that party's favor is improper because there exists a question of credibility which can be resolved only by the trier of fact."  *Turner v. Turner*, 1993-Ohio-176, paragraph one of the syllabus.  However, we do not find that Heindell and Heyduk provided affidavit testimony that was inconsistent with, or contradictory to, their depositions.

**Heindell's Testimony**

{¶23}   The Whitings argue that Heindell's affidavit testimony directly contradicted her deposition testimony that she was not a certified cat groomer at the time of the incident.  While the affidavit wording may be slightly confusing, it was not contradictory to her deposition testimony.   The affidavit does not state that she was a certified *cat* groomer, but only that, on October 6, she "was a Certified Groomer."   Her deposition testimony indicated that she completed the dog grooming academy in August 2023, prior to the incident, and completed the cat grooming academy after the incident.  She was in fact a certified groomer at the time of the incident, although not a certified cat groomer.  She clarified in her deposition testimony that she was not required to be a certified cat groomer under PetSmart policy to assist by holding the cat while her nails were trimmed.  Further, there is nothing in the trial court's entry to indicate that it was "misled" by this statement as the Whitings contend, although we note this court conducts a de novo

Case No. 2025-L-128

review. The trial court specifically indicated that Heindell was only a certified dog groomer at the time of the death and had not obtained a certification to groom cats. While the Whitings argue that PetSmart did not provide any training materials showing her competence to assist with pet grooming, it was not required to do so. Heindell provided testimony regarding her training and the Whitings did not rebut this.

{¶24} The Whitings also argue that Heindell provided "differing testimonies as to the cat's condition when placed back on the table" and indicated that the cat was not in distress and became unresponsive after all of her claws were trimmed. They contend this contradicts the deposition testimony that Strudel was unresponsive at the time she was placed on the table. We fail to see the contradiction. In both statements, she indicated the cat was unresponsive after the claws were trimmed, as she was only placed on the table once this was completed.

{¶25} Next, the Whitings argue that Heindell provided "conflating" testimony as to the cat's discomfort. In her affidavit, Heindell stated that "the cat did not appear to be in any apparent distress while . . . Heyduk trimmed its back nails." During her deposition, she confirmed that she gave a statement that Strudel "did not show any dislike of being held" while also indicating Strudel showed some signs of discomfort, including "meowing, groaning, and moving in her arms" until she calmed down. While the affidavit is slightly different than the deposition, the deposition does not indicate "distress" but some temporary discomfort with being held which was addressed through a break in the trimming. This is not a contradiction that warrants resolution by a trier of fact as it is consistent that Heindell did not observe medical distress or believe Strudel was in danger.

{¶26} The Whitings also argue that the court improperly credited the groomers'

Case No. 2025-L-128

testimony regarding PetSmart's policies in the absence of a handbook. However, there is no requirement that a party's testimony be supported by documents in order to be accepted at the summary judgment stage. The groomers' description of PetSmart policies and procedures in their deposition testimony is evidence of such policies. The Whitings did not submit evidence to create an issue of fact as to this policy. The nonmoving party must "rebut the moving party's position with specific facts demonstrating the existence of a genuine triable issue." *State ex rel. Ware v. Fankhauser*, 2023-Ohio-3939, ¶ 10 (11th Dist.). Whiting's testimony that he had seen trimming performed in different manners as well as the pictures showing multiple groomers during the whole trim on past occasions does not contradict the groomers' testimony regarding PetSmart policy; they explained that two groomers can be used but this is not required.

**Heyduk's Testimony**

{¶27} The Whitings argue that Heyduk gave conflicting statements in her deposition and affidavit testimony. In her deposition, she testified that she was told the Whitings "declined" an autopsy and her affidavit states that "PetSmart offered to pay for a necropsy to determine the cause of death, but Plaintiffs declined the offer." This is not conflicting testimony; the affidavit merely adds additional details to the deposition. "When determining the effect of a party's affidavit that appears to be inconsistent with the party's deposition and that is submitted either in support of or in opposition to a motion for summary judgment, a trial court must consider whether the affidavit contradicts or merely supplements the deposition." *Byrd v. Smith*, 2006-Ohio-3455, syllabus. *See Zara v. Gabrail*, 1999 WL 4497, *2 (5th Dist. Dec. 21, 1998) ("[a]n affidavit which supplements or clarifies an earlier testimony with more specific detail is not in conflict"). Moreover, while

Case No. 2025-L-128

Whiting denies that there was an offer to pay for an autopsy, this is not a dispute as to an issue of material fact. Whether or not they offered to pay for this service has no bearing on whether the Whitings can recover for a wrongful act by PetSmart.

{¶28} To the extent that the Whitings argue the affidavit testimony is self-serving, since we do not find it contradicts their deposition testimony, this argument lacks merit. Further, they contend that the "self-serving" testimony, which was given by nonparty witnesses, should not be credited when there is contrary evidence from the images from video surveillance. Again, however, this shows only that the services were performed in slightly different manners, not that a wrongful act occurred for the purposes of conversion, an issue which will be further discussed in the remaining assignments of error.

{¶29} The Whitings also contend that the groomers' assertion that nothing out of the ordinary occurred should not have been accepted as there was a factual dispute given the holding of the cat and the use of a harness. The evidence presented, including the stills of the video, do not demonstrate a "near chokehold" and there is nothing to demonstrate a harness, described as being used around the arms and shoulders, was inappropriate or unsafe to ensure that a cat is kept close to the groomer and prevented from running away. The court did not err in failing to presume such a harness presents a danger to a cat in the absence of any evidence of such an assertion.

{¶30} The first assignment of error is without merit.

{¶31} In their second assignment of error, the Whitings argue that the trial court erred by applying the incorrect legal standard, observing its finding that there is no evidence of the cause of Strudel's death. They contend that causation is not a required element of conversion and "the court effectively imported a negligence or malpractice

framework into a property-tort claim."

**Requirements to Establish a Conversion Claim**

{¶32} Conversion is "the wrongful exercise of dominion over property to the exclusion of the rights of the owner" and to prevail on a claim for conversion, a plaintiff must demonstrate that the property was converted "by wrongful act." *Joyce*, 49 Ohio St.3d at 96; *Martin*, 2017-Ohio-1101, at ¶ 13 (11th Dist.). "To establish conversion, plaintiff need not demonstrate intent or wrongful purpose or assertion of ownership by defendant." *Sec. Fed. S. & L. Assn. of Cleveland v. Keyes*, 1990 WL 93135, *2 (11th Dist. June 29, 1990).

{¶33} While the Whitings argue that the court should not consider what the cause of death was in determining whether there was a valid conversion claim, absent from their argument is a citation to authority that addresses how the death of an animal should be treated under a conversion claim. *See Anzalone v. Kragness*, 826 N.E.2d 472, 476 (Ill. App. 2005) ("[u]nder the treatment of a pet's wrongful death as the destruction of personal property, the cause of action is typically framed in terms of general negligence or bailment"). However, inherent in a conversion claim for the death of an animal is a requirement to prove that the animal died as a result of the defendant's actions. Otherwise, there is no wrongful act; the death of the animal due to no fault of the person who possesses it at the time of the death cannot be said to involve a wrongful act. A wrongful exercise of dominion cannot occur if there was no wrongful action by the defendant.

{¶34} In addressing a conversion claim, this court has defined "wrongful" as "having no legal sanction: unlawful." *Martin* at ¶ 17, citing *Webster's Third New*

Case No. 2025-L-128

*International Dictionary* (1986). *See Black's Law Dictionary* (12th ed. 2024) (defining a wrongful act as "[a]n act that harms another in the absence of any privilege or justification"). There is a lack of testimony or evidence showing that the groomers' actions were unlawful or that they harmed Strudel. Failing to follow PetSmart procedures, even presuming that this occurred in the present case, would not convert the property, i.e., deprive the Whitings of Strudel, in the absence of harm resulting from this action.

{¶35} The second assignment of error is without merit.

**Whether Evidence Supported Submission of Conversion Claim to a Jury**

{¶36} In their third assignment of error, the Whitings argue that the issue of whether there was a wrongful exercise of dominion is a question of fact that should have been submitted to a jury.

{¶37} We do not agree that there was a factual dispute that warranted resolution at a trial. The two groomers testified that they did not commit the service in a manner that they believed harmed Strudel and verified that it was not inconsistent with PetSmart procedure to use one groomer, to utilize a harness to keep the cat attached to the groomer, or to allow a non-certified cat groomer to hold the cat during the trim. The Whitings did not rebut this by demonstrating any acts that were wrongful. They demonstrated only that the grooming occurred in slightly different manners on different occasions. That groomers perform services differently is not evidence of a wrongful act, particularly given that Heindell and Heyduk indicated they followed PetSmart procedures. The still shots of the video of the grooming do not demonstrate that the actions of the groomers harmed Strudel, that they were unacceptable or inappropriate for trimming a cat's claws, nor did the Whitings present any evidence that showed their wrongful actions

Case No. 2025-L-128

were the cause of the death rather than a reaction to the stress of the trimming or some other factor relating to Strudel's health. These facts do not rise to the level of supporting a claim for conversion at the summary judgment stage.

{¶38} The Whitings cite *Tinter v. Lucik*, 2007-Ohio-4437 (8th Dist.), for the proposition that factual issues of whether there is wrongful exercise of dominion should be submitted to a jury. While this is the case when there is an issue of material fact raised, such as in *Tinter* where there was documentary evidence supporting a conclusion that certain monies had gone missing from a business, we do not find there is a material issue of fact demonstrated by the Whitings that warrants submission of this matter to a jury. At most, they only demonstrated that different groomers at PetSmart practice slightly different methods of cutting a cat's claws, not that a wrongful exercise of dominion or wrongful act occurred such that PetSmart committed conversion.

{¶39} While the Whitings argued below that the doctrine of *res ipsa loquitur* supported their claims and at least created an issue of fact that should be presented to a jury, we disagree. *Res ipsa loquitur* "is a rule of evidence which permits the trier of fact to infer negligence on the part of the defendant from the circumstances surrounding the injury to plaintiff." *Hake v. George Wiedemann Brewing Co.,* 23 Ohio St.2d 65, 66 (1970). The present matter is a claim for conversion rather than negligence and more than negligence is required to prevail on the Whitings' claim. Further, for *res ipsa loquitur* to apply, a plaintiff must establish "(1) the instrumentality causing the injury was under the exclusive management and control of the defendant at the time of the actual injury or at the time of the creation of the condition which resulted in the injury; and (2) the injury occurred under such circumstances that in the ordinary course of events it would not have

occurred if ordinary care had been observed." *Fleegle v. Funtime, Inc.*, 1999 WL 960575, *2 (11th Dist. Sept. 20, 1999). Even presuming this doctrine applied to a conversion claim, we decline to conclude that there is an issue of fact that Strudel's death would not have occurred if ordinary care had been exercised. Setting aside the fact that there was a failure to demonstrate ordinary care was not exercised, we observe that, as a standard part of PetSmart procedure, clients sign a waiver indicating that the grooming process can cause stress to a cat. Such stress could be an alternate cause of Strudel's death and a genuine issue of fact was not created by the Whitings to demonstrate the death would not have occurred if ordinary care had been observed.

{¶40} The third assignment of error is without merit.

{¶41} For the foregoing reasons, the judgment of the Lake County Court of Common Pleas, granting summary judgment in favor of PetSmart, is affirmed. Costs to be taxed against appellants.

MATT LYNCH, P.J.,

EUGENE A. LUCCI, J.,

concur.

Case No. 2025-L-128

## JUDGMENT ENTRY

For the reasons stated in the Opinion of this court, the assignments of error are without merit.  The order of this court is that the judgment of the Lake County Court of Common Pleas is affirmed.

Costs to be taxed against appellants.

_____
JUDGE SCOTT LYNCH


_____
PRESIDING JUDGE MATT LYNCH,
concurs


_____
JUDGE EUGENE A. LUCCI,
concurs

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case No. 2025-L-128