[Cite as *Parkhill Ltd. Liab. Co. v. Economic & Community Dev. Inst., Inc.*, 2019-Ohio-3444.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## LAKE COUNTY, OHIO

| | | |
|---|---|---|
| PARKHILL LIMITED LIABILITY COMPANY, | : | **O P I N I O N** |
| | : | |
| Plaintiff-Appellant, | : | **CASE NO. 2019-L-021** |
| | : | |
| - vs - | : | |
| ECONOMIC AND COMMUNITY DEVELOPMENT INSTITUTE, INC., | : | |
| Defendant-Appellee. | : | |

Civil Appeal from the Lake County Court of Common Pleas, Case No. 2016 CV 000174.

Judgment: Affirmed.

*Jeffrey W. Ruple,* Deacon Cardenas & Ruple, LLC, 2794 Som Center Road, Suite 1, Willoughby Hills, OH 44094 (For Plaintiff-Appellant).

*Ezio A. Listati,* and *Joseph N. Cindric,* Thrasher, Dinsmore & Dolan, LPA, 1111 Superior Avenue, Suite 412, Cleveland, OH 44114 (For Defendant-Appellee).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Parkhill Limited Liability Company ("Parkhill"), appeals the judgment of the Lake County Court of Common Pleas, awarding it $854.80 in damages as a result of the breach of a Subordination Agreement by appellee, Economic and Community Development Institute, Inc. ("ECDI"). For the reasons discussed in this opinion, we affirm the trial court's judgment.

{¶2} In 2012, Parkhill, a commercial landlord, leased commercial space to a tenant, non-party Merholz. Merholz's annual rent for the years 2014 and 2015 was approximately $31,200. To assist with her finances, Merholz obtained a loan from ECDI and used her office equipment in the rented space as collateral. Parkhill and ECDI eventually entered into a Subordination Agreement, which provided Parkhill would give up its rights to Merholz's personal property in favor of ECDI and, in turn, Parkhill would be entitled, upon default by Merholz and a set grace period in which ECDI was entitled to remove the property, to charge ECDI the rate of rent on a per diem basis until the collateral is removed. The following provisions of the Subordination Agreement are germane to this case:

{¶3} 3. <u>Subordination</u>.

{¶4} Landlord [Parkhill] hereby consents to Lender's [ECDI's] security interest (or other interest) in the Collateral and hereby subordinates all interests, liens and claims that Landlord has or may hereafter acquire in the Collateral to the interests, liens and claims of Lender. Landlord agrees that any subordinate lien or claim it may now have or hereafter have in the Collateral will be subject to the rights granted by Landlord to Lender in this agreement.

{¶5} 4. <u>Entry</u>.

{¶6} Landlord and Borrower grant to Lender the right to enter upon the Premises for purpose of removing the Collateral from the Premises * * * within twenty days from the notice of default thereafter Lender will pay the rate of rent of borrower calculated on a per diem basis until collateral is removed.

{¶7} 5. <u>Miscellaneous Provisions</u>.

{¶8} The rights granted to Lender in this Agreement will continue for thirty (30) days after lender receives notice in writing from the Landlord that Borrower no longer is in lawful possession of the Premises. * * *. Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is in writing and signed by Lender. * * *. Without notice to Landlord and without

affecting the validity of this Agreement, Lender may do or not do anything it deems appropriate or necessary with respect to the Loan, any obligors on the Loan, or any Collateral for the Loan; including without limitation extending, renewing, rearranging, or accelerating any of the Loan indebtedness.

{¶9} Merholz failed to pay her rent and Parkhill notified ECDI of the failure on October 1, 2014. Pursuant to its rights under the agreement, ECDI sent its representative, Erin Fach, to inspect the collateral. After the inspection, on October 29, 2014, Fach sent an email to Parkhill's representative, Urban Cornacchione, that ECDI would have "something finalized" for removal of the collateral within a "few days." Cornacchione acknowledged the email and requested the Fach let him know regarding the arrangements because he "will need to have [Parkhill's] lease administration department calculate the per diem rent based on the date [Fach] provide[s]." No subsequent communications occurred between the parties or their representatives. Parkhill kept the collateral in the rental unit until it was re-leased on October 21, 2015 (366 days from the date ECDI was allegedly responsible for per diem rental amount under the Agreement). Parkhill moved the collateral and made a demand upon ECDI to pay the borrower's rent rate on a per diem basis, pursuant to the Subordination Agreement. ECDI refused to pay and Parkhill filed the instant lawsuit.

{¶10} Parkhill's complaint alleged two causes of action against ECDI: an action on account and breach of contract. It further asserted it was entitled to damages in the amount of $37,551, the per diem rental fee from October 21, 2014 through October 22, 2015 (the damages amount was later reduced to $31,284.48, after utilities were subtracted). In its answer, ECDI denied the allegations and asserted various affirmative defenses, including failure to mitigate damages. Parkhill filed a motion for summary

3

judgment, which ECDI opposed. After considering the pleadings, the trial court granted Parkhill's motion as to liability, but set the matter for a damages hearing.

{¶11} After a hearing, the parties filed post-trial briefs. Parkhill asserted it was entitled to the amount sought as well as pre-judgment interest; it further argued it adequately mitigated its damages by advertising the space through a real estate service on-line and via newspaper advertisements and signs on the building. ECDI argued that, pursuant to the Subordination Agreement and Parkhill's alleged failure to mitigate damages, Parkhill was entitled to only 10-days rent, i.e., $854.80. The trial court agreed with ECDI, ruling:

{¶12} After reviewing the Agreement in light of the testimony presented by the parties, the Court finds that the Agreement provided that Defendant had the right to take the collateral for up to thirty days after receiving notice from the Plaintiff landlord that Ms. Merholz was in default of the lease. This thirty day period could not be waived, except in writing. Thus, the Court finds that Defendant owes a per diem rental fee of $85.48, for ten days, which amounts to $854.80.

{¶13} This appeal follows. Appellant assigns the following as error:

{¶14} "The trial court erred in its calculation of Parkhill's damages when it interpreted the Subordination Agreement."

{¶15} A reviewing court generally will not reverse a trial court's decision regarding its determination of damages absent an abuse of discretion. *Williams v. Kondziela,* 11th Dist. Lake No. 2002-L-190, 2004-Ohio-2077, ¶19, citing *Roberts v. United States Fid. & Guar. Co.*, 75 Ohio St.3d 630, 634 (1996). Here, however, the damage award was premised upon the meaning of the Subordination Agreement. The interpretation of a contract is a question of law this court reviews de novo. *Allstate Indemn. Co. v. Collister,* 11th Dist. Trumbull No. 2006-T-0112, 2007-Ohio-5201, ¶15.

4

{¶16} Appellant first argues the trial court's judgment on damages was improper because it "re-interpreted" its prior ruling on liability. We do not agree.

{¶17} In its February 20, 2018 judgment entered on liability, the trial court found that although ECDI could have waived its rights to the collateral prior to the expiration of the 30-day window, it failed to do so in writing. As a result, a hearing on damages was necessary. In granting Parkhill summary judgment on liability, the court observed:

{¶18} Defendant agreed to pay a per diem fee until the collateral is removed. It is uncontroverted that Defendant did not remove the collateral. The Court finds that Plaintiff is entitled to judgment as a matter of law as to liability under the Landlord Subordination and Consent Agreement. However, the Court finds there is an issue of fact as to the appropriate amount of damages.

{¶19} Parkhill asserts the foregoing statement implies it was entitled to the full 366-day, per-diem amount, rather than merely a 10-day, per-diem amount. We disagree with Parkhill's construction. While it is true Paragraph 4 of the agreement, as well as the judgment, states ECDI agreed to pay rent, calculated on a per diem basis until the collateral is removed, still, the purpose of the damages hearing was to hear evidence on what the damages provision meant, particularly in relation to the other provisions in the agreement. In order to obtain an accurate calculation of damages, the court was consequently required to determine not simply the parties' rights and obligations to one another, but whether those rights and obligations extended past the 30-day window set forth in Paragraph 5. Thus, the trial court's judgment on damages is not inconsistent with its judgment on liability.

{¶20} Appellant next argues the trial court erred in failing to follow the unambiguous language of the Subordination Agreement in arriving at its damages calculation. We disagree.

5

{¶21} Paragraph 3 sets forth ECDI's right to a security interest in the collateral. That interest defines the rights ECDI had vis-à-vis Merholz's collateral and specifies that Parkhill subordinates any interest and/or rights it possessed in the property to ECDI. In effect, Paragraph 3 confers Parkhill's interest in the collateral to ECDI as security for Merholz's loan. Paragraph 4 establishes ECDI's right to enter Parkhill's premises to obtain the collateral. That paragraph specifically states that, within 20 days from Parkhill's notice of Merholz's default, ECDI may enter the premises to remove the collateral. After these 20 days, ECDI will pay the rate of rent Merholz had been charged, calculated on a per diem basis until the collateral is removed. This provision represents an obligation ECDI owed Parkhill under the agreement and, if ECDI did not timely remove the collateral, the per diem rental rate represented damages to which Parkhill was entitled.

{¶22} Paragraph 5 states that ECDI's rights under the agreement will continue for 30 days after receiving notice. The trial court interpreted this provision to mean ECDI's right to enter the premises and collect the collateral extended 30 days from the notice of default. As a result, the court concluded, ECDI was only responsible for 10 days rent, the amount of time ECDI had "rights" under the agreement minus the 20-day grace period it had to remove the collateral pursuant to Paragraph 4. We agree with the trial court's conclusion.

{¶23} As discussed above, ECDI accepted Merholz's collateral as security on a loan and, in light of the loan, Parkhill agreed to forgo any interest in the collateral in favor of ECDI. By releasing any possible interest in the collateral, Parkhill agreed that, upon Merholz's default, ECDI would have 20 days to remove the property and, if it did

6

not do so, ECDI would be obligated to pay per diem rental for storage of the collateral. Because, however, ECDI's rights under the contract expired 30 days following the default, it would reasonably follow any obligations it owed in derivation of the agreement would also cease. To read the contract otherwise would permit Parkhill to charge ECDI per diem rent for collateral over which it had no rights and, even if it had some lingering interest in the collateral, ECDI would possess no right to enter the premises and repossess the same. This is absurd because if, as here, ECDI did not exercise its rights within the 30-day period, Parkhill could require ECDI to satisfy the rent due for the remainder of the lease even though it would receive no reciprocal benefit. Parkhill's construction allows for an unreasonable windfall redounding to its benefit, leaving ECDI with no rights or authority to cure the problem. Accordingly, we conclude, pursuant to the contract, if ECDI did not collect the collateral within the 30-day window, it lost its rights to the same and the collateral was essentially abandoned.

{¶24} "Abandoned property" is defined as "'property over which the owner has relinquished all right, title, claim, and possession with the intention of not reclaiming it or resuming its ownership, possession or enjoyment.'" *Perez Bar & Grill v. Schneider*, 9th Dist. Lorain No. 11CA010076, 2012-Ohio-5820, ¶32, quoting *Doughman v. Long*, 42 Ohio App.3d 17, 21 (12th Dist.1987); *see also First Fed. S. & L. Assn. of Warren v. A & M Towing & Road Serv., Inc.*, 127 Ohio App.3d 46, 52 (11th Dist.1998). Moreover, "'[a]bandonment requires affirmative proof of the intent to abandon coupled with acts or omissions implementing the intent.'" *Perez Bar & Grill* at ¶32, quoting *Long v. Noah's Lost Ark, Inc.*, 158 Ohio App.3d 206, 2004-Ohio-4155, ¶35 (7th Dist.) "One who has abandoned property forfeits any interest in it and has no say over its subsequent

7

disposition." *Weaver v. Weaver,* 2d Dist. Montgomery No. 17759, 2000 WL 84655, *1 (Jan. 28, 2000).

**{¶25}** We recognize that Paragraph 5 includes a provision whereby ECDI could essentially abandon the collateral via a written waiver. This provision is clearly operative *prior to* the expiration of the 30-day window in which ECDI could exercise its rights. Once 30 days has passed, ECDI is deemed, by operation of the terms of the agreement, to have relinquished any rights under the contract, including its right to enter Parkhill's premises and obtain the collateral. Paragraph 5 operates an affirmative acknowledgement of ECDI's abandonment of the property and, as such, once its rights have extinguished, any obligations it owed vis-à-vis the collateral are similarly extinguished. We therefore hold the trial court did not err in concluding ECDI owed 10-days per-diem rent to Parkhill in damages, pursuant to Paragraphs 4 and 5 of the Subordination Agreement.

**{¶26}** Finally, Parkhill argues the trial court erred in failing to utilize R.C. 1343.03(A) to calculate its interest award from the date of accrual, as opposed to the judgment date.

**{¶27}** Pursuant to R.C. 1343.03(A), "when money becomes due and payable upon any * * * instrument of writing, * * * and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of * * * a contract * * * the creditor is entitled to interest * * *." The statutory language found in R.C. 1343.03(A) is mandatory. *See, e.g., Cek v. Rdoht*, 11th Dist. Lake No. 99-L-023, 2000 WL 1114806, *4 (Aug. 4, 2000). This, however, does not imply that a trial court is divested of all discretion in a R.C. 1343.03(A) claim. *McKay v. McKay*, 2d Dist. Montgomery No.

8

23702, 2010-Ohio-3348, ¶21, citing *Textiles, Inc. v. Design Wise, Inc.,* 12th Dist. Madison Nos. CA2009-08-015, CA2009-08-018, 2010-Ohio-1524, ¶50. Instead, the court's discretion is confined to a determination of when money becomes "due and payable." *Landis v. Grange Mut. Ins. Co.*, 82 Ohio St.3d 339, 342 (1998); *see also Royal Elec. Constr. Corp. v. Ohio State Univ.,* 73 Ohio St.3d 110, 115 (1995).

**{¶28}** In this case, the parties did not agree on the amount of damages that were due. And, even though Parkhill submitted a statement on account 366 days after notice of Merholz default, as discussed above, that statement reflected an inaccurate calculation of its damages. Because there were issues of material fact regarding the amount "due and payable," we conclude the trial court did not abuse its discretion in awarding interest from the date of the judgment.

**{¶29}** Parkhill's assignment of error is without merit.

**{¶30}** For the reasons discussed in this opinion, the judgment of the Lake County Court of Common Pleas is affirmed.

TIMOTHY P. CANNON, J.,

MATT LYNCH, J.,

concur.