[Cite as *Holman v. Wiser*, 2023-Ohio-4095.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## ASHTABULA COUNTY

| | |
|---|---|
| ADAM HOLMAN, et al., | **CASE NO. 2022-A-0117** |
| Plaintiffs-Appellees, | |
| - vs - | Civil Appeal from the Court of Common Pleas |
| KOURTNIE A. WISER, et al., | |
| Defendant-Appellant. | Trial Court No. 2022 CV 00103 |

**O P I N I O N**

Decided: November 13, 2023
Judgment: Affirmed

*Jason L. Carter*, Carter Law, LLC, 16781 Chagrin Boulevard, Suite 287, Shaker Heights, OH 44120 (For Plaintiffs-Appellees).

*Barbara Quinn Smith*, Law Offices of Barbara Quinn Smith, 9853 Johnnycake Ridge Road, Suite 106, Mentor, OH 44060 (For Defendant-Appellant).

MARY JANE TRAPP, J.

{¶1} Appellant, Kourtnie A. Wiser ("Mrs. Wiser"), appeals the judgment of the Ashtabula County Court of Common Pleas, following a bench trial, finding her and Cory Wiser ("Mr. Wiser") (collectively, "the Wisers") liable for conversion of personal property and awarding damages in the sum of $41,100 to appellees, Adam Holman ("Mr. Holman"), Betty Holman ("Mrs. Holman"), RoLesia Holman, Trustee of the Adam Holman and Betty R. Holman Irrevocable Trust ("RoLesia"), and Reginald Holman ("Reginald") (collectively, "the Holmans").

{¶2} This matter involves a real property sale gone awry, where the Wisers purchased a house from the Holmans but refused to return their personal property after the sale closed early.

{¶3} Mrs. Wiser raises five assignments of error, contending (1) the trial court erred as a matter of law in finding she was not entitled to possession of the premises upon delivery of the deed; (2) the trial court erred by failing to consider whether the personal property was abandoned; (3) the trial court erred as a matter of law in applying a replacement cost valuation of the personal property; (4) the trial court's valuation of the personal property was not supported by sufficient evidence and is contrary to its manifest weight; and (5) the trial court erred by precluding the Wisers from challenging the Holmans' valuation evidence.

{¶4} After a careful review of the record and pertinent law, we find Mrs. Wiser's assignments of error are without merit:

{¶5} (1) Although the trial court failed to apply the "merger by deed" rule, in which the language of a deed controls over a conflicting purchase agreement, Mrs. Wiser did not inform the trial court about the rule at trial or in her closing brief, despite the court's repeated requests for relevant legal authority. Even if we reviewed for plain error, the record fully supports the trial court finding Mrs. Wiser liable for conversion based on her failure to return the personal property and her disposal of items.

{¶6} (2) Mrs. Wiser cannot overcome the presumption the trial court considered her abandonment defense. Implicit in the trial court's express finding that the Holmans owned the personal property was they had not abandoned it. To the extent Mrs. Wiser contends the trial court's finding is against the manifest weight of the evidence, the record

2

is replete with evidence indicating the Holmans sought to retrieve their personal property before, during, and after the deed transfer process.

{¶7} (3) The trial court's valuation method is not contrary to law. The Holmans' opinion of value was not based "solely" on the property's "replacement value." In addition, a trial court is not required to use market value in all instances, and the trial court fully explained its rationale for adopting the Holmans' opinion of value.

{¶8} (4) The trial court's valuation of the personal property was supported by sufficient evidence. The Holmans, as the owners, were entitled to a presumption of special knowledge. In addition, Mrs. Wiser has not demonstrated the trial court's damages award put the Holmans in a better position.

{¶9} (5) The trial court did not preclude the Wisers from challenging the Holmans' opinion of value. The trial court simply found the Holmans' opinion of value was more credible and reliable than the Wisers' competing opinion of value.

{¶10} Thus, we affirm the judgment of the Ashtabula County Court of Common Pleas.

### Substantive and Procedural History

{¶11} For nearly three decades, Mr. and Mrs. Holman lived in the house at 3559 Austinburg Road in Ashtabula, Ohio. The couple eventually relocated to an assisted living facility. Their son, Reginald, continued to live in the house periodically. The house was titled in the name of the Holmans' irrevocable trust. The couple's daughter, RoLesia, served as trustee and as Mr. Holman's attorney-in-fact.

{¶12} Pursuant to a written purchase agreement dated August 30, 2021, Mr. Holman agreed to sell the house to Mr. Wiser for $160,000. Both sides retained real

3

estate agents: the Holmans hired Tara Hawkins ("Ms. Hawkins"), and the Wisers hired Teri Holtz ("Ms. Holtz"). The agents communicated with each other about the transaction primarily through text messaging.

{¶13} The original purchase agreement required the parties to deposit all funds and documents in escrow "on or about" October 1, 2021, followed by transfer of title "on or about" October 2, 2021, and delivery of possession on October 2, 2021, "provided the title has transferred." The parties subsequently signed three amendments extending these dates to permit the completion of repairs required by the Wisers' lender. The third and final amendment required the parties to deposit all funds and documents in escrow "on or before" November 22, 2021, followed by transfer of title "on or about" November 23, 2021, and delivery of possession on November 23, 2021, "provided the title has transferred."

{¶14} The premises contained a large amount of personal property the Holman family had accumulated during their long period of occupancy, including a vehicle, a tractor, furniture, tools, books, memorabilia, antique dolls, and items of sentimental value. The basement area contained clothing, jewelry, and other personal items owned by Reginald. In November 2021, Reginald began removing the personal property from the house.

{¶15} On Friday, November 12, 2021, Ms. Hawkins texted Ms. Holtz to ask if the Wisers would allow Reginald to retrieve items post-transfer. Ms. Holtz expressed annoyance the Holmans had not already moved out but stated the Wisers would allow it if they "can get the keys today." Ms. Hawkins stated RoLesia was signing the closing documents at 3 p.m. Ms. Holtz replied, "So they won't get the keys today or tomorrow

4

looks like it [the closing] won't be till Monday so the brother [Reginald] should just be out of the house." Ms. Hawkins also informed Ms. Holtz there was a car in the driveway with a dead battery, which the Holmans intended to move. Ms. Holtz replied, "You did not just say that lol [laughing out loud]." She then expressed anger and stated she may have to get her "broker" involved.

{¶16} Later that day, RoLesia, as trustee, signed a warranty deed to transfer the real property to the Wisers. Over the weekend, RoLesia was scheduled to attend a relative's funeral and travel out of state for work. According to RoLesia, she informed Ms. Hawkins the closing of the sale was contingent on Reginald having access to the house to remove the rest of the personal property. The warranty deed RoLesia signed contained no written contingencies regarding post-transfer access.

{¶17} On Saturday, November 13, 2021, Ms. Holtz conducted a final walk-through of the house. She would later describe the house as "total chaos," with many items of personal property still remaining. She texted Ms. Hawkins, "I have no idea how they're gonna get all that stuff out of there by Monday morning." Ms. Hawkins responded, "The seller [RoLesia] told me that her belongings will be out by today – her brother [Reginald] is supposed to be getting the rest."

{¶18} On the morning of Monday, November 15, 2021, Ms. Holtz asked Ms. Hawkins to ensure the Holmans had removed all property from the premises. Ms. Hawkins responded that RoLesia had indicated all of her belongings would be removed and that Reginald had indicated he would remove everything else by the end of the week. Ms. Holtz replied, "[A]s soon as title transfers I'll let the [Wisers] know the lockbox number so they can get over there."

5

{¶19} Later that day, the Wisers obtained the keys and took possession of the house. At 12:06 p.m., Ms. Holtz texted Ms. Hawkins that the house was "packed full" and Reginald had "not touched one thing since we left on Saturday." Ms. Hawkins contacted RoLesia, who was still on her work trip. She told Ms. Hawkins to contact Reginald. Ms. Hawkins texted Ms. Holtz to contact Reginald. Ms. Holtz refused and indicated the Wisers had changed the locks.

{¶20} In the afternoon, Reginald and another person came to the house to pick up items, but Mrs. Wiser denied them access. According to Reginald, Mrs. Wiser told him to "get the hell off the property" and threatened to call the police, so he left. Ms. Holtz texted Ms. Hawkins and suggested she "go over there and be the liaison." Ms. Hawkins responded, "I'm working on a solution." No resolution occurred.

{¶21} On Tuesday, November 16, 2021, the deed was recorded. According to Mrs. Wiser, people continued to arrive at the house on behalf of the Holmans, but she denied them access and refused to give them anything. She would later testify the police told her everything belonged to her upon transfer. Mrs. Wiser subsequently had the vehicle towed from the property, disposed of a freezer (because it purportedly contained mold), and destroyed the contents of a filing cabinet.

{¶22} The Holmans retained legal counsel, and, in March 2022, filed a complaint against the Wisers in the trial court asserting claims for replevin, breach of oral contract, fraud, and conversion. The Wisers appeared through counsel and filed an answer.

{¶23} In May 2022, the parties and counsel appeared for a replevin hearing. Counsel informed the court on the record that the Wisers agreed to prepare an inventory of the items in their possession, and the parties would discuss transfer arrangements.

6

The Wisers' counsel was later permitted to withdraw, and no transfer of items occurred. The Wisers eventually retained new counsel.

{¶24} In September 2022, following an additional court hearing, Reginald was permitted to retrieve items from the house with a trailer. Several items were excluded from this transfer, although the parties disputed which items were in existence and/or missing.

{¶25} The matter was tried to the bench on November 15, 2022. The Holmans presented testimony from Ms. Hawkins, RoLesia, Reginald, and, on cross-examination, the Wisers. The Wisers presented testimony from Mrs. Wiser and Ms. Holtz. Both sides presented documentary evidence.

{¶26} Following the Holmans' submission of evidence, the Wisers moved for a directed verdict. The trial court asked if there was anything indicating the transfer of title pursuant to the deed controlled over the date of possession stated in the purchase agreement. Counsel stated there was nothing beyond what was presented. The trial court denied the Wisers' motion.

{¶27} Following the Wisers' submission of evidence, counsel agreed to submit briefs in lieu of closing arguments. The trial court asked the Wisers' counsel whether he had any "contractual provision, statutory provision or case law that states the date of possession moves up to the date the Deed was recorded." Counsel stated his belief that the signing of the deed "moved up the date of possession" and indicated he would address that issue in his closing brief. Both parties subsequently filed closing briefs.

{¶28} On November 30, 2022, the trial court filed a judgment entry finding the Wisers liable for conversion and awarding damages to the Holmans in the sum of

7

$41,100. The trial court found the Wisers took physical possession of the house on November 15, 2021, which was eight days before the amended purchase agreement legally permitted them to do so. The trial court determined that the personal property located in the house on November 15, 2021, legally belonged to the Holmans, and the Wisers wrongfully precluded the Holmans from entering the house to recover it.

{¶29} The trial court further found the Holmans' opinion of value was the "best estimate" because they acquired the property and were more familiar with its condition and value. The court stated it would be wrong to allow the Wisers to benefit from their denial of access to the property or to allow the Wisers to dispute the Holmans' "good faith appraisal based upon their memory and research." The trial court determined that the Holmans' opinion of value was "the more credible and reliable value" of the property as of November 15, 2021.

{¶30} Mrs. Wiser appealed[1] and raises the following five assignments of error:

{¶31} "[1.] The Trial Court Erred As A Matter Of Law In Finding That The Wisers Were Not Entitled To Possession Of The Premises Until November 23, 2021.

{¶32} "[2.] The Trial Court Erred By Failing To Consider Whether The Property Had Been Abandoned.

{¶33} "[3.] The Trial Court Erred As A Matter Of Law In Applying A Replacement Cost Valuation To Calculate Damages.

{¶34} "[4.] The Trial Court Erred By Fixing The Value Of The Holmans' Personal Property At A Grossly Excessive Sum Not Supported By The Evidence And Contrary To The Manifest Weight Of The Evidence.

---

1. Mr. Wiser is not an appellant in Mrs. Wiser's notice of appeal, and he did not file a separate appeal.

Case No. 2022-A-0117

{¶35} "[5.] The Trial Court Erred By Refusing To Allow The Wisers To Challenge The Holmans' Testimony As To Value."

**Standard of Review**

{¶36} "[O]n appeal from a bench trial we review the trial court's factual findings under the manifest weight standard of review * * *." *Ultimate Salon & Spa, Inc. v. Legends Constr. Group*, 2019-Ohio-2506, 139 N.E.3d 445, ¶ 30 (11th Dist.). "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. * * * Weight is not a question of mathematics, but depends on its effect in inducing belief.'" (Emphasis deleted.) *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *Black's Law Dictionary* 1594 (6th Ed.1990). "'The [appellate] court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'" *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶37} "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C. E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus. "[A] court of appeals [must] be guided by a presumption that the findings of the trier-of-fact were indeed correct. * * * The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their

9

demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). "'[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * * If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'" *Id.* at 80, fn. 3, quoting 5 Ohio Jurisprudence 3d, Section 603, at 191-192 (1978).

{¶38} "[T]he trial court's legal findings," by contrast, "are reviewed de novo." *Ultimate Salon* at ¶ 30. De novo review generally means the appellate court independently reviews the record and affords no deference to the trial court's decision. *In re Placement of A.R.V.*, 2016-Ohio-4929, 68 N.E.3d 410, ¶ 12 (11th Dist.).

### Right of Possession

{¶39} In her first assignment of error, Mrs. Wiser contends the trial court erred as a matter of law in finding she was not entitled to possession of the house until November 23, 2021, i.e., the date stated in the amended purchase agreement. According to Mrs. Wiser, the trial court should have found she was entitled to possession on November 15, 2021, i.e., the date the deed was purportedly delivered.

{¶40} As Mrs. Wiser accurately notes, the Supreme Court of Ohio has long recognized the doctrine of "merger by deed," which holds "[w]here a deed is delivered and accepted without qualification pursuant to agreement, no cause of action upon the prior agreement thereafter exists." *Fuller v. Drenberg*, 3 Ohio St.2d 109, 209 N.E.2d 417

10

(1965), paragraph one of the syllabus. *Accord S.E. Baseball & Softball Assn. v. Deerfield Twp., Bd. of Trustees*, 11th Dist. Portage No. 2020-P-0079, 2021-Ohio-2887, ¶ 108. Thus, "[u]nder the merger doctrine, upon closing of a real estate transaction, the parties are limited to the express covenants in the deed." *Westwinds Dev. Corp. v. Outcalt*, 11th Dist. Geauga No. 2008-G-2863, 2009-Ohio-2948, ¶ 80.

{¶41} Crucially, Mrs. Wiser raises the merger rule for the first time on appeal. She did not inform the court about the rule during trial or in her closing brief, despite the trial court's repeated requests for relevant legal authority. "[T]he fundamental rule is that an appellate court will not consider any error which could have been brought to the trial court's attention, and hence avoided or otherwise corrected." *Schade v. Carnegie Body Co.*, 70 Ohio St.2d 207, 210, 436 N.E.2d 1001 (1982). "Although in *criminal* cases '[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court,' Crim.R. 52(B), no analogous provision exists in the Rules of *Civil* Procedure." (Emphasis sic.) *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121, 679 N.E.2d 1099 (1997). The Supreme Court of Ohio has held that "[i]n appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Id.* at syllabus.

{¶42} Even if this matter qualified as an exceptional case, we would not find plain error. The Supreme Court of Ohio has held "where the judgment is correct, a reviewing court is not authorized to reverse such judgment merely because erroneous reasons were

11

assigned as the basis thereof." *Agricultural Ins. Co. v. Constantine*, 144 Ohio St. 275, 284, 58 N.E.2d 658 (1944). Rather, "[i]t is the duty of the reviewing court to affirm the judgment if it can be supported on any theory, although a different theory from that of the trial court." *Newcomb v. Dredge*, 105 Ohio App. 417, 424, 152 N.E.2d 801 (2d Dist.1957). "This is so because reviewing courts affirm and reverse judgments, not the reasons for the judgments." *Geneva v. Fende*, 11th Dist. Ashtabula No. 2009-A-0023, 2009-Ohio-6380, ¶ 33. "Thus, when a trial court has stated an erroneous basis for its judgment, an appellate court must affirm the judgment if it is legally correct on other grounds, that is, it achieves the right result for the wrong reason, because such an error is not prejudicial." *State v. Payton*, 124 Ohio App.3d 552, 557, 706 N.E.2d 842 (12th Dist.1997).

{¶43} Mrs. Wiser's argument involves the trial court's finding that she is liable for conversion. "[C]onversion is the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his [or her] possession under a claim inconsistent with his [or her] rights." *Joyce v. Gen. Motors Corp.*, 49 Ohio St.3d 93, 96, 551 N.E.2d 172 (1990). "The elements of conversion are: (1) the plaintiff's ownership and right to possess the property at the time of the conversion; (2) the defendant's conversion by wrongful act of plaintiff's property rights; and (3) damages." *Martin v. MAHR Machine Rebuilding, Inc.*, 11th Dist. Lake No. 2015-L-101, 2017-Ohio-1101, ¶ 13.

{¶44} Where conversion is premised on the unlawful retention of property, the plaintiff must establish (1) he or she demanded the return of the property from the possessor after the possessor exerted dominion or control over the property, and (2) the possessor refused to deliver the property to its rightful owner. *Fisher v. Clay*, 11th Dist. Trumbull No. 2011-T-0031, 2011-Ohio-6007, ¶ 22.

12

Case No. 2022-A-0117

{¶45} Mrs. Wiser fails to recognize the critical distinction between her right to possess the real property after delivery of the deed and the Holmans' right to possess the personal property located in the house. The delivery of the deed entitled the Wisers to possess the real property. *See Jones v. Timmons*, 21 Ohio St. 596, 602 (1871) ("Assuming the right of possession to be determinable by the deed, the plaintiff, on its delivery, acquired a clear right to the possession, which the defendant, by his deed, was estopped from questioning"); *Turnbull v. Xenia*, 80 Ohio App. 389, 392, 69 N.E.2d 378 (2d Dist.1946) ("[L]egal title draws to and carries with it the right of possession"). It did not, however, transfer ownership of the personal property or entitle the Wisers to refuse to return it. The evidence demonstrates the Holmans sought to retrieve their personal property before, during, and after the deed transfer process, and the Wisers exerted dominion and control over the personal property and even disposed of some of it. Accordingly, despite the trial court's failure to apply the merger rule, the record fully supports the trial court finding Mrs. Wiser liable for conversion.

{¶46} Mrs. Wiser's first assignment of error is without.

### Abandonment

{¶47} In her second assignment of error, Mrs. Wiser contends the trial court erred by failing to consider whether the personal property had been abandoned.

{¶48} "'Abandoned property' is defined as "'property over which the owner has relinquished all right, title, claim, and possession with the intention of not reclaiming it or resuming its ownership, possession or enjoyment.'"" *Parkhill Ltd. Liab. Co. v. Economic & Community Dev. Inst., Inc.*, 11th Dist. Lake No. 2019-L-021, 2019-Ohio-3444, ¶ 24, quoting *Perez Bar & Grill v. Schneider*, 9th Dist. Lorain No. 11CA010076, 2012-Ohio-

13

5820, ¶ 32, quoting *Doughman v. Long*, 42 Ohio App.3d 17, 21, 536 N.E.2d 394 (12th Dist.1987). "'One who has abandoned property forfeits any interest in it and has no say over its subsequent disposition.'" *Id.*, quoting *Weaver v. Weaver*, 2d Dist. Montgomery No. 17759, 2000 WL 84655, *1 (Jan. 28, 2000). "[A]bandoned property is not subject to conversion" and "constitutes a complete defense." *Bourland v. Town & Country Imports*, 11th Dist. Geauga No. 975, 1982 WL 5855, *3 (Mar. 31, 1982).

{¶49} Although the trial court did not specifically address abandonment, "[a]n appellate court reviewing a lower court's judgment indulges in a presumption of regularity of the proceedings below." *Hartt v. Munobe*, 67 Ohio St.3d 3, 7, 615 N.E.2d 617 (1993). "A reviewing court must presume that the trial court applied the law correctly." *State v. Coombs*, 18 Ohio St.3d 123, 125, 480 N.E.2d 414 (1985). In finding Mrs. Wiser liable for conversion, the trial court expressly determined that the Holmans owned the personal property. Implicit in this finding was that the Holmans had *not* abandoned it. *See Baldwin v. Vogelsong*, 6th Dist. Wood No. WD-01-065, 2003-Ohio-683, ¶ 21 ("Insofar as the jury awarded damages to the [plaintiffs] against the [defendants], it was implicit in the jury's verdict that it found the property was not abandoned"). Therefore, Mrs. Wiser cannot overcome the presumption that the trial court considered her abandonment defense.

{¶50} To the extent Mrs. Wiser contends the trial court's finding is against the manifest weight of the evidence, we disagree. "'Abandonment requires affirmative proof of the intent to abandon coupled with acts or omissions implementing the intent. Mere non-use is not sufficient to establish the fact of abandonment, absent other evidence tending to prove the intent to abandon.'" *Interstate Petroleum Co. v. Young*, 2013-Ohio-

14

1943, 992 N.E.2d 468, ¶ 61 (11th Dist.), quoting *Davis v. Suggs*, 10 Ohio App.3d 50, 52, 460 N.E.2d 665 (12th Dist.1983).

**{¶51}** Here, the record is replete with instances in which the Holmans sought to retrieve their personal property. While their efforts may have been disorganized and protracted, the evidence does not support Mrs. Wiser's assertions that they "chose to leave many items behind," *Durben v. Malek*, 5th Dist. Tuscarawas No. 2013 AP 08 0032, 2014-Ohio-2611, ¶ 32, or "sat passively and did nothing to protect their interests." *Wright v. Heller*, 2018-Ohio-149, 102 N.E.3d 1285, ¶ 7 (1st Dist.).

**{¶52}** Mrs. Wiser's second assignment of error is without merit.

### Valuation Method

**{¶53}** In her third assignment of error, Mrs. Wiser contends the trial court erred as a matter of law in using a "replacement cost valuation" of the personal property instead of a "market value measurement."

**{¶54}** In a conversion claim, the general rule for the measure of damages is the value of the property at the time of conversion. *Erie RR. Co. v. Steinberg*, 94 Ohio St. 189, 113 N.E. 814 (1916), paragraph two of the syllabus. "Market value is the standard which the courts insist on as a measure of direct property loss, where it is available * * *." *Bishop v. East Ohio Gas Co.*, 143 Ohio St. 541, 546, 56 N.E.2d 164 (1944). "Market value" or "fair value" is generally defined as "'the price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's-length transaction * * *.'" *Perez, supra*, at ¶ 35, quoting *Black's Law Dictionary* 1587 (8th Ed.2004).

**{¶55}** However, a trial court is not required to use market value in all instances. The Supreme Court of Ohio has held that "[m]arket value * * * is a standard not a shackle."

15

*Bishop* at 546.  "In a tort action, the measure of damages is normally that amount of money which will compensate and make whole the injured party."  *Columbus Fin., Inc. v. Howard*, 42 Ohio St.2d 178, 184, 327 N.E.2d 654 (1975).  Therefore, "'[t]he rule that the market value is the measure of damages for the wrongful conversion of personal property is subordinate to the fundamental rule that the owner must be fully compensated.'"  *Bishop* at 546, quoting McCormick on Damages 170.  "When market value cannot be feasibly obtained, a more elastic standard is resorted to, sometimes called the standard of value to the owner.  This doctrine is a recognition that property may have value to the owner in exceptional circumstances which is the basis of a better standard than what the article would bring in the open market."  *Id.*  "[W]here the property converted by the defendant * * * consists of articles for personal use, which have been used by the owner, and therefore have little or no market value, the measure of damages is the reasonable value to the owner at the time of conversion."  *Erie RR.* at paragraph three of the syllabus.

{¶56}  Contrary to Mrs. Wiser's assertion, the Holmans' opinion of value was not based "solely" on the property's "replacement value."  RoLesia testified that Mr. Holman, Reginald, and she collectively sought to assign "fair amounts" based on a "combination" of factors, including what Mr. Holman or Reginald knew they had paid, Googling documents, and conducting due diligence.  She testified that some items, such as the yard tools, cans of paint, and the car battery, were "virtually new"; items like the circular saws were not new but were in "good condition"; the antique dolls were "collector's items" that had no problems or damages; and other items were "decades old" and had "sentimental value" that one could not "necessarily put a price to."  She acknowledged

16

the challenge of assigning values to items that were no longer in the Holmans' possession but indicated they "did the best [they] could."

{¶57} In addition, the trial court fully explained its rationale for adopting the Holmans' opinion of value. It found the Holmans acquired the property and, thus, were more familiar with its condition and value. While they were denied access to the property for valuation, the Holmans "conducted a good faith appraisal based upon their memory and research." Accordingly, the trial court's valuation method is not contrary to law.

{¶58} Mrs. Wiser's third assignment of error is without merit.

### Damages Calculation

{¶59} In her fourth assignment of error, Mrs. Wiser contends the trial court's damages calculation is not supported by sufficient evidence.

{¶60} "'"[S]ufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the [finder of fact] or whether the evidence is legally sufficient to support the * * * verdict as a matter of law.'" *Thompkins*, *supra*, at 386, quoting *Black's Law Dictionary* 1433 (6th Ed.1990). "Whether the evidence is legally sufficient to sustain a verdict is a question of law." *Id.*

{¶61} Mrs. Wiser accurately recites the rule in Ohio that an owner is permitted to testify concerning the value of his or her property without being qualified as an expert because he or she is presumed to have special knowledge. *Tokles & Son, Inc. v. Midwestern Indemn. Co.*, 65 Ohio St.3d 621, 626, 605 N.E.2d 936 (1992). According to Mrs. Wiser, however, a witness must additionally "show that he is familiar with the property itself and that he has current sufficient knowledge of the value of the item by, for example, demonstrating a firsthand knowledge of the characteristics of the property, its

17

actual and potential uses and its condition or by showing other meaningful experience dealing with the item." *Id.* at 627. She contends the Holmans' opinion of value is not supported by sufficient evidence because they failed to present testimony regarding the foregoing factors.

{¶62} Mrs. Wiser's argument misconstrues *Tokles.* In that case, the Supreme Court of Ohio considered whether a shareholder/officer of a closely held corporation must qualify as an expert in order to testify as to the value of corporate property. *See id.* at 626. The court answered this question in the negative, provided that the testifying shareholder/officer establishes the above factors. *See id.* at 627. The court did not impose them upon owners who are natural persons; thus, the general presumption of special knowledge continues to apply in that context. Accordingly, the Holmans were not required to establish the above factors.

{¶63} Mrs. Wiser also contends that the trial court's damages award is contrary to the manifest weight of the evidence. According to Mrs. Wiser, since the values adopted by the trial court "do not take into account usage or condition," the damages award constitutes a windfall to the Holmans.

{¶64} "Although a party damaged by the acts of another is entitled to be made whole, the injured party should not receive a windfall; in other words, the damages awarded should not place the injured party in a better position than that party would have enjoyed had the wrongful conduct not occurred." *Triangle Properties, Inc. v. Homewood Corp.*, 2013-Ohio-3926, 3 N.E.3d 241, ¶ 52 (10th Dist.).

{¶65} We disagree with the premise of Mrs. Wiser's argument, i.e., that the Holmans' opinion of value did not consider usage or condition. RoLesia's testimony, as

18

summarized above, indicates the Holmans' expressly considered such factors in assigning values. Accordingly, Mrs. Wiser has not demonstrated that the damages award placed the Holmans in a better position.

{¶66} Mrs. Wiser's fourth assignment of error is without merit.

### Challenge to Valuation Evidence

{¶67} Finally, in her fifth assignment of error, Mrs. Wiser contends the trial court erred by refusing to allow her to challenge the Holmans' valuation evidence. Specifically, she quotes the following paragraph in the trial court's judgment entry, which she characterizes as "fundamentally wrong" and "without precedent":

{¶68} "The Court finds that the appraisal made by the Holman's [sic] of the personal property that was the [sic] legally theirs and that they were wrongfully denied recovery, is the best estimate to be given to the value of the property, because they acquired the property, and they are more familiar with the condition and value of the property. It would be inherently wrong to allow the Wisers to benefit from denying access to the Holmans of the property owned by the Holmans. *It would also be wrong to allow the Wisers to dispute the value given to the property by the Holmans, when the Holmans conducted a good faith appraisal based upon their memory and research*." (Emphasis added.)

{¶69} Mrs. Wiser's argument suggests the trial court precluded her from submitting evidence at trial to challenge the Holmans' opinion of value. This is not accurate. The trial transcript demonstrates the Wisers cross-examined RoLesia and Reginald about the proposed values, and the Wisers submitted evidence of their own Blue Book valuation of the vehicle. The statement quoted above reflects the trial court's

19

rationale for adopting the Holmans' opinion of value. This is confirmed by the trial court's very next statement, which Mrs. Wiser omits:

{¶70} "Therefore, the Court finds that the appraisal made by the Holmans of the personal property that belongs to them and that they have been wrongfully denied possession of, is the more credible and reliable value to be given to the property."

{¶71} Mrs. Wiser cites no authority in support of her assertion that the trial court's reasoning was erroneous. On the other hand, it is well established that "[o]n the trial of a case, either civil or criminal, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. "The choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986). "A fact finder is free to believe all, some, or none of the testimony of each witness appearing before it." *State v. Fetty*, 11th Dist. Portage No. 2011-P-0091, 2012-Ohio-6127, ¶ 58. Accordingly, the trial court was well within its discretion to adopt the Holmans' opinion of value over the Wisers' competing opinion.

{¶72} Mrs. Wiser's fifth assignment of error is without merit.

{¶73} For the foregoing reasons, the judgment of the Ashtabula County Court of Common Pleas is affirmed.

EUGENE A. LUCCI, J., concurs,

JOHN J. EKLUND, P.J., dissents with a Dissenting Opinion.

20

Case No. 2022-A-0117

JOHN J. EKLUND, P.J., dissents with a Dissenting Opinion.

{¶74} The trial court's judgment found the Wisers converted the personal property the Holmans left in the house. In finding that, the trial court determined there was no evidence:

> that the Holmans were required to vacate the property prior to November 23, 2021 * * * [and] that none of the personal property was to remain in the house when possession transferred from the Holmans to the Wisers. * * * The Holmans fully complied with the agreement.

{¶75} The Court further determined the Wisers:

> physically took over the house on November 15, 2021, eight days before they legally were entitled to obtain possession of the house. The Wisers blocked the Holmans from entering the house that the Holmans legally had a right to possess for eight more days. The Wisers blocked the Holmans from recovering their personal property that was in the house the Holmans legally had a right to possess. Therefore, the Court finds that all of the property in the house on November 15, 2021 when the Wisers entered the house, legally belonged to the Plaintiffs.

{¶76} On this legal and factual basis, the trial court concluded that the property in the house on November 15, 2021, still belonged to the Holmans and that the Wisers converted that property.

{¶77} "[O]n appeal from a bench trial we review the trial court's factual findings under the manifest weight standard of review, while the trial court's legal findings are reviewed de novo." *Ultimate Salon & Spa v. Legends Constr. Group*, 2019-Ohio-2506, 139 N.E.3d 445, ¶ 30 (11th Dist.).

{¶78} The majority correctly determined the merger by deed doctrine applied to this matter. *Nelson v. Nelson*, 11th Dist. Geauga No. 2007-G-2758, 2007-Ohio-6246, ¶

21

22; *Meyers Lake Sportsman's Club, Inc. v. Meyers Lake Preserve, Inc.*, 5th Dist. No. 2012CA00198, 2013-Ohio-3227, 996 N.E.2d 1016, ¶ 34. ("The doctrine of 'merger by deed' holds that whenever a deed is delivered and accepted without qualification pursuant to a sales contract for real property, the contract becomes merged into the deed and no cause of action upon said prior agreement exists.").

{¶79} The deed in this case had no express conditions in its language referencing a later possession date or indicating that the Holmans would retain a right of access for a period after title passed. Nor did the deed include any generalized provisions stating that the obligations or agreements contained in the purchase agreement survive or transfer to the deed.

{¶80} Thus, the trial court erred as a matter of law when it determined, pursuant to the purchase agreement, that the Holmans were not required to vacate the real property or remove their personal possessions until November 23. This means the Holmans did not establish a claim for conversion on the basis of the purchase agreement because they had no right of possession or access to the real property after November 15, 2021.

{¶81} The trial court's ruling was premised upon the Wisers committing a conversion because the purchase agreement allowed eight more days for the Holmans to recover their personal property and remove it from the house. As the trial court erred as a matter of law, the only factual findings the trial court made on the issue of conversion were (erroneously) grounded in the Holmans' continued right to possess the real estate.

{¶82} Conversion is an exercise of dominion or control wrongfully exerted over property in denial of, or under a claim inconsistent with the rights of another. *Joyce v.*

22

*Gen. Motors Corp.*, 49 Ohio St.3d 93, 96, 551 N.E.2d 172 (1990). The elements of conversion are: "(1) plaintiff's ownership or right to possession of the property at the time of conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages." 18 American Jurisprudence 2d (1985) 146-147, Conversion, Section 2; *Dice v. White Family Cos.*, 173 Ohio App.3d 472, 2007-Ohio-5755, 878 N.E.2d 1105, ¶ 17 (2nd Dist.); *Floch v. Davis*, 11th Dist. Trumbull No. 2013-T-0021, 2013-Ohio-4968, ¶ 29. Where conversion is based on a claim of unlawful retention of property, the plaintiff must establish: (1) a demand for the return of the property from the possessor after the possessor exerted dominion or control over the property; and (2) that the possessor refused to deliver the property to the rightful owner. *Keybank Natl. Assoc. v. Guarnieri & Secrest, P.L.L.*, 7th Dist. Columbiana No. 07 CO 46, 2008-Ohio-6362, ¶ 15.

**{¶83}** The Holmans transferred possession of the real property on November 15, 2021. On that date, they no longer had a right to access the personal property still on the real property because the transfer granted the Wisers the right to deny access to the real property. The personal property the Holmans left behind came into the Wisers' possession – but not ownership – upon the Holmans' transfer of the real property.

**{¶84}** Further, there is significant disparity in the testimony about the extent to which the Holmans made a demand for the return of the property and whether the Wisers exerted dominion or control over the property or merely came to possess it because of the Holmans' failure to remove it before transferring the real estate. The Wisers indicated that the Holmans repeatedly came to the house unannounced and tried to enter the residence to recover their property. The Holmans' testimony indicated that Reginald went

23

to the house to assess how much still needed to be moved, how big of a truck to get, and how many people were needed to perform the task.

{¶85} Because there are significant questions of fact which a reviewing court is not in the best position to answer, I would reverse and remand this matter to the trial court to apply the facts to the correct legal standard and thereby determine whether a conversion occurred. Therefore, I respectfully dissent.

Case No. 2022-A-0117